# Illinois Official Reports

## Supreme Court

---

### *People v. Shinaul*, 2017 IL 120162

---

| | |
|---|---|
| Caption in Supreme Court: | PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CORNELIUS SHINAUL, Appellee. |
| Docket No. | 120162 |
| Filed | February 17, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the First District, heard in that court on appeal from the Circuit Court of Cook County, the Hon. Thomas M. Davy, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and John E. Nowak, Assistant State's Attorneys, of counsel), for the People. |
| | Michael J. Pelletier, State Appellate Defender, Patricia Mysza, Deputy Defender, and S. Amanda Ingram, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |

Justices          CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

Justice Theis dissented, with opinion.

**OPINION**

¶ 1        Defendant Cornelius Shinaul, who was 17 years old at the time, was arrested on February 9, 2009, for various firearm possession offenses. On April 8, 2009, he was charged with nine felony counts—eight aggravated unlawful use of a weapon (AUUW) counts and one unlawful possession of a firearm count. Following a Rule 402 conference (Ill. S. Ct. R. 402 (eff. July 1, 1997)) on June 2, 2009, defendant, as part of a negotiated plea agreement, pled guilty to count I of the information (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)) in exchange for the State agreeing to a *nolle prosequi* on the remaining charges. The Cook County circuit court accepted the guilty plea and sentenced defendant to 24 months' probation based on the Class 4 felony offense of AUUW. 720 ILCS 5/24-1.6(d)(2) (West 2008). Pursuant to the agreement, the remaining counts against defendant were nol-prossed by the State. Defendant served and completed the full term of his sentence.

¶ 2        On October 28, 2013, defendant brought a petition for relief under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), seeking to vacate the conviction on the basis that it was void under this court's decision in *People v. Aguilar*, 2013 IL 112116, ¶ 21, which held that the Class 4 form of AUUW set forth in section 24-1.6(a)(1), (a)(3)(A), (d) was facially unconstitutional. Conceding that defendant's conviction should be vacated in light of *Aguilar*, the State filed a motion to reinstate certain AUUW counts that were previously nol-prossed.

¶ 3        The circuit court held a hearing on both defendant's petition and the State's motion. At no time did defendant challenge whether the State could bring its motion in this proceeding. Rather, defendant argued that the nol-prossed charges were time-barred. Addressing the parties' arguments, the circuit court agreed that *Aguilar* voided defendant's conviction and that defendant could withdraw his guilty plea.[1] In the circuit court's detailed analysis, the court also denied the State's motion on the basis that reinstatement of the charges would violate the one-act, one-crime doctrine. Following the conclusion of the hearing on the parties' motions, the circuit court entered a written order consistent with its oral pronouncement. The State, thereafter, filed a motion to reconsider in the circuit court, citing *People v. Hughes*, 2012 IL 112817, and *People v. McCutcheon*, 68 Ill. 2d 101 (1977), for the proposition that the previously nol-prossed charges against defendant should be reinstated because (1) the charges were dismissed before jeopardy attached and (2) there were no constitutional or statutory limitations precluding the prosecution of defendant on those charges. The circuit court denied the State's motion to reconsider, and the State timely appealed.

---

[1]The circuit court's order allowing defendant to withdraw his guilty plea was unnecessary under the circumstances because defendant's conviction was vacated.

¶ 4        The appellate court determined it lacked jurisdiction to consider the State's appeal. 2015 IL App (1st) 140477, ¶ 9. In dismissing the appeal, the appellate court rejected the State's argument that Illinois Supreme Court Rule 604(a)(1) (eff. Feb. 6, 2013), which permits the State to appeal any order that has the substantive effect of dismissing a charge, confers appellate jurisdiction. 2015 IL App (1st) 140477, ¶ 9. Justice Pierce specially concurred in the judgment, writing to emphasize that, because defendant filed a section 2-1401 petition to vacate his conviction, the circuit court had jurisdiction to consider only whether the judgment of conviction was valid and that the portion of the circuit court's order stating "[d]efendant's guilty plea to count one is withdrawn" was surplusage because under the terms of Illinois Supreme Court Rule 605(b), the circuit court lacked jurisdiction to allow defendant to withdraw his plea. (Internal quotation marks omitted.) *Id.* ¶ 18 (Pierce, J., specially concurring).

¶ 5        The State filed a petition for rehearing, arguing that even if the appellate court lacked jurisdiction under Rule 604(a)(1), it had jurisdiction pursuant to Illinois Supreme Court Rule 304(b)(3) (eff. Feb. 26, 2010), which allows appellate review of "[a] judgment or order granting or denying any of the relief prayed in a petition under section 2-1401 of the Code of Civil Procedure." 2015 IL App (1st) 140477, ¶ 20. Upon the denial of rehearing, the appellate court modified its opinion and rejected the State's contention that it was not appealing an order granting or denying a section 2-1401 petition but, rather, it was appealing an order denying its motion to reinstate charges. *Id.* The appellate court reasoned that "[t]he mere fact that two separate orders—one appealable and one nonappealable—are contained in the same document does not automatically render each order independently appealable." *Id.* We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Jan. 1, 2015).

¶ 6                                              ANALYSIS

¶ 7        The threshold question to be resolved in this case is whether the appellate court erred in dismissing the State's appeal for lack of jurisdiction. For the same reasons determined by the appellate court, defendant urges affirmance of the appellate court's dismissal on the basis that the circuit court's order was nonappealable. The State first argues that the order from which it is appealing is a final and appealable judgment as a matter of right under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), because the issues between the parties were fully resolved when the circuit court addressed all of the pending issues in a single written order. Even if the circuit court's order denying the State's motion to reinstate the nol-prossed counts could not be appealed as of right, the State claims that the appellate court had jurisdiction to entertain the appeal under Illinois Supreme Court Rule 304(b)(3) (eff. Feb. 26, 2010), which allows for appeals from a judgment or order granting or denying any of the relief requested in a section 2-1401 petition. For the following reasons, we find that the appellate court had jurisdiction to review the circuit court's order.

¶ 8        Whether the appellate court has jurisdiction to consider an appeal presents a question of law, which we review *de novo*. *People v. Salem*, 2016 IL 118693, ¶ 11. A civil remedy that extends to criminal cases, section 2-1401 of the Code of Civil Procedure outlines a comprehensive, statutory procedure by which final orders and judgments may be vacated by the circuit court more than 30 days following their entry. 735 ILCS 5/2-1401 (West 2012); *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). A section 2-1401 proceeding is a new and separate

cause of action that is subject to the usual rules of civil procedure. *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 23 (citing *Vincent*, 226 Ill. 2d at 7).

¶ 9    It is undisputed that defendant's section 2-1401 petition correctly asserted that his conviction as part of the negotiated plea should be vacated in light of this court's decision in *People v. Aguilar*, 2013 IL 112116. Further, the State properly filed its motion to reinstate the prior nol-prossed charges by proceeding under this court's alternative method of reinstating once nol-prossed charges.[2] See *People v. Hughes*, 2012 IL 112817, ¶¶ 24-25 (identifying two mechanisms by which the State can reinstate once nol-prossed charges: the State may file a new information or indictment, or the State can alternatively move to vacate the *nolle prosequi* and reinstate the original charges). The question, then, is whether the circuit court's denial of the State's motion was a final and appealable order.

¶ 10    Article VI, section 6, of the Illinois Constitution confers on the appellate court jurisdiction to hear appeals from all final judgments entered by the circuit court. Ill. Const. 1970, art. VI, § 6. It is well settled that a "final judgment" is a determination by the circuit court on the issues presented by the pleadings "which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit." *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 47. In other words, a judgment or order is considered final and appealable if it determines the litigation on the merits such that the only thing remaining is to proceed with execution of judgment. *In re Michael D.*, 2015 IL 119178, ¶ 13; *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 233 (2005). Accordingly, only an order which leaves the cause still pending and undecided is not a final order for purposes of appeal.

¶ 11    In this case, the issues before the circuit court were limited to whether the AUUW count to which defendant had pled guilty should be vacated, whether he should be allowed to withdraw his negotiated guilty plea, and whether the State should be allowed to reinstate the counts it had nol-prossed as part of that negotiated plea agreement. The State filed its motion in defendant's section 2-1401 proceeding in response to defendant initiating proceedings to vacate a conviction bargained for in the negotiated plea agreement. See *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 279-80 (1982) (section 2-1401 petitions are essentially complaints inviting responsive pleadings). Similar to a counterclaim, the State's motion was conditioned upon defendant's success in vacating his conviction. If the circuit court denied defendant's section 2-1401 petition, the State would have no need to reinstate the prior dismissed charges. In fact, the State would have been barred from doing so because such action would constitute a breach of the plea agreement. *Santobello v. New York*, 404 U.S. 257, 262 (1971); *People v. Whitfield*, 217 Ill. 2d 177, 189 (2005). Once the circuit court granted the relief sought in defendant's petition, the condition on which the State's motion was dependent was triggered, and the merits of the State's motion became pertinent to the outcome of the judgment. When the circuit court ultimately denied the State's motion on the basis that reinstatement of the nol-prossed charges would violate the one-act, one-crime doctrine, a final decision on the State's motion was entered.

¶ 12    Generally, if an order merely strikes a complaint or a count of a complaint but grants leave to amend, or dismisses less than all the parties or issues, it is not an appealable final order.

---

[2]Although the State's motion to have the nol-prossed charges reinstated did not contain a request to vacate the dismissal of the charges, we find that such request is implicitly included in the State's motion.

- 4 -

*Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 25; *Doner v. Phoenix Joint Stock Land Bank of Kansas City*, 381 Ill. 106, 110 (1942). That is not the case here. To the contrary, there is no dispute that the circuit court's order leaves no cause pending or undecided, nor does the order merely strike the State's motion but grant leave to amend, nor does the order dismiss less than all the parties or issues. Rather, the order granted defendant's motion to vacate his conviction and denied the motion to reinstate the nol-prossed charges on the merits. Once the circuit judge resolved all the pending issues in its written order, the matter terminated—on the merits—between the parties, thereby allowing the State to seek review, as of right, of the circuit court's ruling.

¶ 13 Because this court has determined that the appellate court had jurisdiction under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. IV, § 6), this court does not need to determine whether Rule 304(b)(3) likewise confers appellate jurisdiction. Since the record and the briefs fully address the issue not reached by the appellate court, in the interest of judicial economy, we have elected to proceed to the merits of this appeal. See *Krasnow v. Bender*, 78 Ill. 2d 42, 47 (1979) (finding it appropriate to consider the merits of an issue not addressed by the appellate court because the parties fully briefed the issue). That issue is whether, following a successful collateral attack on a conviction, the State is entitled to reinstatement of the charges that were nol-prossed as part of the plea agreement entered into with defendant.

¶ 14 In this case, defendant attacked his conviction under the plea agreement because the offense to which he pled guilty was declared unconstitutional and void *ab initio* by this court in *Aguilar*. In light of *Aguilar*'s holding, defendant correctly notes that he essentially pled guilty to something that was never a crime. See *People v. Mosley*, 2015 IL 115872, ¶ 55 (holding that subsection (a)(3)(A) of the AUUW statute was void from its beginning). To receive relief from his void conviction, defendant properly understood that the only way to vacate a conviction after a judgment has been entered on a guilty plea is to hold that the plea was defective and that his conviction should be vacated through the filing of a section 2-1401 petition. *People v. McFadden*, 2016 IL 117424, ¶¶ 20, 31-32. When a circuit court vacates and sets aside a judgment, as it has done here, the prior judgment is eliminated, and the case thereby returns to its status before the judgment was made. *People v. Evans*, 174 Ill. 2d 320, 332 (1996). In many circumstances, this will leave a case in a procedural posture such that it requires further proceedings. For the reasons stated below, however, the facts of this case prevent reinstatement of the nol-prossed charges.

¶ 15 This court has held that absent "any applicable constitutional or statutory limitations which a defendant may raise," the State may request the court to reinstate once nol-prossed charges. *Hughes*, 2012 IL 112817, ¶ 25. Here, defendant repeats his circuit court argument that even if the plea agreement is no longer enforceable, the criminal statute of limitations (720 ILCS 5/3-5 (West 2012)) constitutes an absolute bar against reinstating the nol-prossed charges since the State's motion was filed beyond the three-year statute of limitations period.

¶ 16 Although the criminal statute of limitations is subject to tolling (see *People v. Coleman*, 206 Ill. 2d 261, 290 (2002) (fraudulent concealment may toll the statute of limitations if certain elements are met)), the State cites no authority, and we find none, for the proposition that the Criminal Code of 2012 (Code) (720 ILCS 5/1-1 *et seq.* (West 2012)) permits the tolling of the statute of limitations, when, as here, a defendant successfully has his conviction vacated after the period of limitations has expired on the original charges that were dismissed in accordance

with a plea agreement. The State argues, however, that under the corresponding section of the Code that sets forth periods excluded from the statute of limitations (720 ILCS 5/3-7 (West 2012)), the "prosecution" against defendant was still pending and has yet to expire for the purpose of the limitations period because defendant's case never had a final disposition on appeal. Under the State's theory, fairness demands that the statute of limitations be tolled in perpetuity when charges are dismissed pursuant to a plea agreement. The State's argument is based on this court's application of contract principles when considering the enforceability of plea agreements. See *People v. Donelson*, 2013 IL 113603, ¶ 18 (recognizing an analogy between the principles of contract law and the interpretation of plea agreements); *In re Derrico G.*, 2014 IL 114463, ¶ 99 ("[T]he enforceability of plea agreements is not a one-sided affair as the other half of the contractual equation is the benefit of the bargain accruing to the State." (Internal quotation marks omitted.)); *People v. Whitfield*, 217 Ill. 2d 177, 190 (2005) (where a defendant enters a negotiated plea of guilty in exchange for specified benefits, "*both the State and the defendant* must be bound by the terms of the agreement" (emphasis in original)). Indeed, defendant's successful section 2-1401 petition has upset what the State reasonably understood to be a final disposition of a criminal matter, eliminating any reason to suspect that it still had to protect the societal interest in prosecuting defendant. However, we are not persuaded by the State's tolling argument.

¶ 17 The criminal statute of limitations serves two primary purposes: to avoid the use of stale evidence and to provide an incentive for swift governmental action in criminal cases. *United States v. Ewell*, 383 U.S. 116, 122 (1966); *People v. Strait*, 72 Ill. 2d 503, 506 (1978). Limitations are "designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Toussie v. United States*, 397 U.S. 112, 114-15 (1970). Such statutes "represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice." *United States v. Marion*, 404 U.S. 307, 322 (1971). Since protection of the defendant is a primary purpose of the statute of limitations in criminal cases, the statute must be liberally construed to protect the interests of the defendant. *People v. Ross*, 325 Ill. 417, 421 (1927). Absent express language in the statute providing an exception, we will not depart from the plain language and read into the statute exceptions, limitations, or conditions that the legislature did not express. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 15. As stated, there is no provision in the Code that permits the tolling of the statute of limitations in the circumstances before this court. While the statute of limitations may benefit some wrongdoers (*Ross*, 325 Ill. at 421-22), we decline to create a prophylactic rule or read into the statute of limitations a nonexistent exception in order to benefit the State. To do so would be precisely contrary to the central purpose of the statute of limitations and inconsistent with this court's general principles of statutory interpretation.

¶ 18 The State, in effect, argues that denying reinstatement of the nol-prossed charges after the statute of limitations has expired could have a chilling effect on the plea bargaining process, in that the State may be fearful of nol-prossing charges in light of the possibility that the conviction under a statute later declared unconstitutional may be vacated. Notwithstanding that concern, we recognize that prosecutors in other jurisdictions have contracted with defendants to avoid the statute of limitations defense. See *United States v. Levine*, 658 F.2d 113, 120-21 (3d Cir. 1981) (citing cases for the proposition that a defendant can knowingly and intelligently

- 6 -

waive the statute of limitations, thus sanctioning a later indictment that, absent such a waiver, would be untimely); *United States v. Meeker*, 701 F.2d 685, 688 (7th Cir. 1983) ("The purposes of a time bar are not offended by a knowing and voluntary waiver of the defense by the defendant."); see also *United States v. Podde*, 105 F.3d 813, 821 (2d Cir. 1997). Without expressing a view on whether such waivers would be valid, we note that the State does not advance a waiver claim before this court. Accordingly, we find that the statute of limitations serves as an absolute bar to the State's motion to reinstate the charges it nol-prossed.

¶ 19                                    CONCLUSION

¶ 20     For the reasons given, we reverse the judgment of the appellate court and affirm the judgment of the circuit court, albeit for different reasons.

¶ 21     Appellate court judgment reversed.
¶ 22     Circuit court judgment affirmed.

¶ 23     JUSTICE THEIS, dissenting:

¶ 24     I disagree with the majority's holding that the statute of limitations serves as an absolute bar to the State's motion to reinstate the charges it nol-prossed as part of a negotiated plea agreement. Today's holding allows defendants to circumvent negotiated plea agreements without any consequences to their voluntary choices and without ensuring the protection of the public. The result reached is not compelled by law and is contrary to the contract principles that guide our analysis. For these reasons, I respectfully dissent.

¶ 25                                    BACKGROUND

¶ 26     On April 8, 2009, defendant was charged with eight counts of aggravated unlawful use of a weapon (AUUW) and one count of unlawful possession of a firearm. Specifically, he was charged with knowingly carrying a firearm on his person or alternatively possessing the firearm on a public street, when the firearm was uncased, loaded, and immediately accessible (counts I and V) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A); (a)(2), (a)(3)(A) (West 2008)); knowingly carrying a firearm on his person or alternatively possessing the firearm on a public street, without having been issued a currently valid Firearm Owners Identification Card (FOID) (counts II and VI) (720 ILCS 5/24-1.6(a)(1), (a)(3)(C); (a)(2), (a)(3)(C) (West 2008)); knowingly carrying a firearm on his person or alternatively possessing the firearm on a public street and being a member of a street gang or engaged in street gang related activity (counts III and VII) (720 ILCS 5/24-1.6(a)(1), (a)(3)(F); (a)(2), (a)(3)(F) (West 2008)); knowingly carrying a handgun on his person or alternatively possessing a handgun on a public street and being under 21 years of age (counts IV and VIII) (720 ILCS 5/24-1.6(a)(1), (a)(3)(I); (a)(2), (a)(3)(I) (West 2008)); and being under 18 years of age and having in his possession a firearm of a size which may be concealed upon the person (count IX) (720 ILCS 5/24-3.1(a)(1) (West 2008)). As the majority notes, at the time of his arrest, defendant was 17 years old.

¶ 27     In June 2009, pursuant to a fully negotiated plea agreement, defendant was convicted on count I of the information for AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)), a Class 4 felony. In exchange for his plea, the State agreed to enter a *nolle prosequi* on the remaining eight counts, and defendant was placed on probation for a period of two years. At

that time, defendant was admonished of his appeal rights pursuant to Illinois Supreme Court Rule 605 (eff. Oct. 1, 2001). The court explained that defendant had the right to challenge his conviction and sentence on appeal but that in order to do so he would need to timely file a motion to withdraw his plea. He was admonished that if the motion to withdraw was allowed, the case would be set for trial and the State could reinstate the other counts that were dismissed.

¶ 28 In October 2013, after having completed his probation, defendant filed a petition for relief from judgment under section 2-1401, seeking to vacate his conviction and withdraw his guilty plea on the basis that the statute under which he was convicted was facially unconstitutional and void under this court's decision in *People v. Aguilar*, 2013 IL 112116. In response to the petition, the State conceded that defendant had the constitutional right to have his conviction vacated but moved to reinstate the other eight felony charges that had been previously nol-prossed as part of the negotiated plea agreement. In support, it relied in part on *People v. McCutcheon*, 68 Ill. 2d 101 (1977), where this court held that "[f]airness for the interests of the People demands that the State not be bound by a plea agreement, once a condition of that agreement (the guilty plea) is no longer valid." *Id.* at 107.

¶ 29 At the hearing, in addressing whether the State could reinstate the nol-prossed charges, defendant argued, without articulating any basis or citing any authority, that the nol-prossed charges should be time-barred and were also unconstitutional under the second amendment. Without considering either of these arguments, the circuit court instead found that allowing the State to reinstate the nol-prossed charges would violate the one-act, one-crime doctrine. The appellate court dismissed the appeal, finding that it lacked appellate jurisdiction. Thus, at no point in the lower court proceedings has the issue of whether the statute of limitations bars the State's reinstatement of the nol-prossed charges ever been considered.

¶ 30                                                              ANALYSIS

¶ 31 In considering the issue for the first time in this court, the majority holds that the statute of limitations prevents the State from prosecuting the charges it dismissed as part of a negotiated plea agreement. In support of its holding, it relies on the fact that the State cited no authority, and the court found none, that would permit the tolling of the statute of limitations under these facts. *Supra* ¶ 16.

¶ 32 I disagree with the analytical approach taken by the majority because it entirely fails to consider the effect of defendant's actions on the continued viability of the plea agreement. By skipping over an important step in the analysis, the majority arrives at an erroneous conclusion. The issue in this case is whether, after a defendant exercises his right to vacate his bargained-for conviction because the offense to which he pleaded was void from its inception, the State may then reinstate charges that were dismissed pursuant to that negotiated plea agreement. More specifically, we must determine whether the State's obligation to dismiss certain charges under the negotiated plea agreement was discharged when defendant prevailed in vacating his conviction.

¶ 33 The State argues that, under these circumstances, requiring it to keep its part of the bargain flies in the face of principles of contract law where defendant's actions essentially frustrated the purpose of the agreement, leading to an "unexpected windfall to defendant." Accordingly, it maintains that once defendant's conviction was vacated and he no longer had a felony

- 8 -

conviction on his record, the State was no longer bound to the plea agreement and was entitled to reinstate the other eight constitutionally valid charges it had originally brought.

¶ 34 Although this court has not had prior occasion to answer the question squarely presented in this appeal, we have consistently recognized that when interpreting negotiated plea agreements, we apply contract analysis. *People v. Donelson*, 2013 IL 113603; *In re Derrico G.*, 2014 IL 114463. This court has discussed the fact that when a defendant enters a negotiated plea in exchange for specific benefits, both the State and the defendant must be bound by the terms of the agreement. *People v. Evans*, 174 Ill. 2d 320, 327 (1996). Neither side should be able to unilaterally renege or seek modification " 'simply because of uninduced mistake or change of mind.' " *Id.* (quoting *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986)). Thus, we have held that it would be inconsistent with constitutional concerns of fundamental fairness to allow a defendant to hold the State to its part of the bargain while unilaterally modifying a part of the agreement. *Id.* We have further recognized that "the State is much less likely to enter into plea negotiations if it realizes its decision to dismiss [charges under a plea agreement] is irrevocable while the defendant's decision to plead is revocable." *McCutcheon*, 68 Ill. 2d at 107.

¶ 35 We have not considered, however, what, if any, remedy applies under contract principles when, through no fault of either party, an unforeseeable intervening event destroys the basis of the contract and creates a situation where performance by one party no longer gives the other party what induced it to enter into the contract. Under a similar scenario, the Tenth Circuit in *United States v. Bunner*, 134 F.3d 1000 (10th Cir. 1998), applied the frustration of purpose doctrine.

¶ 36 The frustration of purpose doctrine provides as follows:

> "Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary." Restatement (Second) of Contracts § 265 (1981).

The doctrine requires that the frustrated purpose "be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." Restatement (Second) of Contracts § 265 cmt. a (1981). Additionally, the frustration "must be so severe that it is not fairly to be regarded as within the risks that [the party seeking rescission] assumed under the contract." *Id.* Lastly, "the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made." *Id.*

¶ 37 Applying these principles here, a basic assumption underlying the plea agreement was that defendant would have a constitutionally valid felony conviction on his record to protect the public. Otherwise, the transaction would make no sense. Secondly, an intervening change in the law several years later, which rendered the conviction void, completely undermined the basis for the plea agreement and was a risk neither party could have foreseen. Any benefit the parties thought they were getting was illusory because the bargain was illegal. Indeed, the circuit court could not have entered judgment on the plea because it was an unenforceable plea agreement. Although defendant did not technically violate any explicit term of the plea agreement, by choosing to vacate his conviction, he in essence unilaterally modified the agreement and destroyed the basis of the State's bargain.

¶ 38    As the *Bunner* court explained, once the underlying purpose of the agreement was frustrated and the basis of the State's bargain destroyed, the State's remedy was to either (1) "perform according to the letter of the plea agreement" or (2) "seek discharge of its duties" and return the parties to the positions they occupied before defendant entered his negotiated guilty plea. *Bunner*, 134 F.3d at 1005. In this case, the State is seeking the latter remedy. Accordingly, I would hold that under the frustration of purpose doctrine, when defendant chose to vacate his conviction, the State was then discharged of its obligation under the plea agreement to dismiss the other eight charges, restoring the parties to the positions they held prior to the entry of the plea and prior to the dismissal of the nol-prossed charges.

¶ 39    Under this construct, upon restoration of the status quo *ante*, the statute of limitations does not bar the State from prosecuting the charges that had been nol-prossed under the plea agreement. The majority's reliance on *Hughes*, 2012 IL 112817, to conclude otherwise is misplaced. *Supra* ¶ 9. In *Hughes*, the defendant was charged with numerous sexual offenses. Prior to trial, the circuit court granted the State leave to enter a *nolle prosequi* on several counts of the indictment. The State's decision to *nolle* those counts was not part of a plea bargain. Based on the remaining pending charges, the State instituted civil commitment proceedings, and after a trial, defendant was declared a sexually dangerous person. Upon a reversal on appeal, the State sought to proceed again with the criminal prosecution and entered into a plea agreement with defendant on one of the charges that the State had nol-prossed. *Hughes*, 2012 IL 112817, ¶¶ 5-7. We explained that when the State nol-prosses a charge, it leaves the matter "in the same condition as before the prosecution commenced" and, therefore, does not toll the statute of limitations. *Id.* ¶ 23. Thus, generally, based on *Hughes*, the State cannot refile or reinstate a nol-prossed charge after the statute of limitations has run where the defendant has asserted a challenge on that basis.

¶ 40    Nevertheless, as distinct from the State's unilateral *nolle* in *Hughes*, in this case, the State's obligation to *nolle* was a condition of a negotiated plea agreement, which was discharged. See *McCutcheon*, 68 Ill. 2d at 112 (recognizing the distinction between a dismissal that was conditioned on a plea agreement and a dismissal that is unconditional). When the State unilaterally dismisses a charge, it leaves the matter in the same position as before the prosecution commenced, where the statute of limitations was running. Here, when the State's obligation to dismiss under the plea agreement is discharged, the parties are restored to the position they held after the charges were filed but prior to the entry of the plea agreement. At that point in time, the statute of limitations had not expired. Consequently, defendant cannot now claim that the statute of limitations has run.

¶ 41    Restoring the parties to the same position they held after the charges were filed and before the plea agreement was entered does not frustrate the purpose of the limitations period under these circumstances. To hold otherwise would allow defendant to escape the consequences of a felony conviction and circumvent the underlying purpose of the bargain without allowing the State to rescind its part of the bargain. Rather, when defendant successfully challenged his conviction, the bargain became defective. The parties should be treated no differently than had defendant been allowed to withdraw his plea. In that case, we would have held defendant was on notice that if the plea was withdrawn or challenged on appeal, the State was entitled to reinstate the charges. See Ill. S. Ct. R. 605 (eff. Oct. 1, 2001). Here, merely because defendant had the right to challenge his bargained-for conviction by a collateral attack, he should not

receive more than the "benefit of his bargain," and the State should not be prevented from receiving all that it bargained for.

¶ 42 I would further reject defendant's assumption that restoring him to the status quo *ante* is impossible because he has served his two-year probation under the agreement. Defendant's argument is premature and unwarranted where he would be entitled to full credit for time served on his vacated conviction. Additionally, defendant's claim of prosecutorial vindictiveness lacks merit. This is not a case where the State is seeking to add charges or file more serious charges after a defendant has successfully challenged his conviction. "There is no appearance of retaliation when a defendant is placed in the same position as he was in before he accepted the plea bargain." *United States v. Anderson*, 514 F.2d 583, 588 (7th Cir. 1975).

¶ 43                                                   CONCLUSION

¶ 44 I would hold that under contract principles the State was entitled to reinstate the eight charges that had been nol-prossed under the negotiated plea agreement after defendant prevailed on his petition to vacate his conviction. Accordingly, I respectfully dissent.