NOTICE

Decision filed 06/04/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190495-U

NO. 5-19-0495

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Alexander County. |
| | ) | |
| v. | ) | No. 19-CF-40 |
| | ) | |
| JOHNNY L. WARREN, | ) | Honorable |
| | ) | Jeffery B. Farris, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court erroneously dismissed defendant's charges when it combined separate periods of incarceration in calculating defendant's 120-day speedy trial term.

¶ 2    The State of Illinois appeals the circuit court's order denying the State's motion to reconsider the court's August 27, 2019, order granting defendant, Johnny L. Warren's, motion to dismiss on speedy trial grounds. The sole issue on appeal is whether the circuit court should have denied defendant's motion to dismiss. For the following reasons, we reverse and remand for further proceedings.

1

¶ 3                                      I. Background

¶ 4    On January 23, 2019, defendant was arrested and, the next day, charged by information in No. 19-CF-6 with five counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2018)) for the death of Stacy A. Carter-Gonzalez on January 11, 2019. At his initial appearance on January 24, 2019, defendant informed the circuit court of his intention to be represented by private counsel. The court did not appoint counsel for defendant at that time.[1]

¶ 5    At the preliminary hearing on February 7, 2019, defendant appeared without counsel and requested a public defender. After inquiring into defendant's financial ability to hire private counsel, the circuit court appointed a public defender for defendant and reset the preliminary hearing for February 14, 2019.

¶ 6    At the hearing on February 14, 2019, the circuit court ruled that probable cause had been shown. Following defense counsel request, the court set defendant's arraignment for February 21, 2019.

¶ 7    At the February 21, 2019, arraignment, defense counsel informed the circuit court of defendant's intention to file a motion to reduce bond. In addition, at the request of defense counsel, defendant's arraignment was rescheduled for March 5, 2019.

¶ 8    On March 5, 2019, the circuit court held defendant's arraignment and heard argument on defendant's motion to reduce bond. The State requested additional time to prepare for a hearing on defendant's motion to reduce bond. In addition, as it relates to defendant's arraignment, defendant waived a formal reading of the charges against him,

[1]A transcript from the January 24, 2019, hearing is not contained in the record on appeal.

possible penalties, and entered pleas of not guilty. The court set a pretrial hearing for March 28, 2019, and a jury trial was scheduled for April 9, 2019. The court subsequently denied defendant's motion to reduce bond.

¶ 9 On March 28, 2019, the State requested a continuance for defendant's jury trial until May 14, 2019, informing the circuit court that it was waiting on evidence from the Illinois State Police (ISP) crime lab. Defense counsel objected, indicating that defendant was prepared to move forward and desired to exercise his right to a speedy trial. Before granting the State's request for continuance, the court inquired as to defendant's speedy trial rights. In response, the State informed the court that if its motion to continue was granted and defendant's jury trial took place on May 14, 2019, defendant would be in custody for 111 days. The court set a pretrial hearing for April 23, 2019.

¶ 10 At the April 23, 2019, pretrial hearing, the circuit court entered an order for forensic testing, allowing defendant the right to examine the State's evidence against him, including all laboratory testing and results. The court ordered the ISP crime lab to complete all forensic testing and send all lab reports to the Alexander County State's Attorney's Office before the final pretrial hearing.

¶ 11 On May 7, 2019, the parties appeared before the circuit court for a final pretrial hearing. At the hearing, both the State and defense counsel indicated readiness to proceed with defendant's jury trial. Defendant's jury trial was scheduled to begin on May 14, 2019.

¶ 12 On May 14, 2019, at the outset of defendant's trial, the State made an oral motion to continue, informing the circuit court that four subpoenaed witnesses, three of which

were material, had failed to appear. According to the State, pursuant to section 103-5(c) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-5(c) (West 2016)), the court could continue the cause for an additional 60 days provided the State had exercised due diligence without success. Defense counsel objected. While argument continued before the court, two of the four witnesses arrived in court. Given this, the court informed the parties that jury selection would begin, and it would revisit the State's oral motion to continue after it allowed the sheriff additional time to obtain the two missing witnesses. In addition, the court asked "the State and the defendant *** [to] sit down *** and calculate what *** is an agreed number on where the speedy trial statute stands."

¶ 13    Following jury selection, the circuit court addressed the State's motion to continue. At that time, three of the four witnesses had appeared in court, although one material witness, Fanelle Woodson, who was allegedly present on the night of the murder, had not appeared. Over defense counsel's objection, the court held Woodson in contempt of court, issued a warrant to allow the State further opportunity to locate its witness overnight, and reserved its ruling on the State's motion to continue.

¶ 14    The next day, on May 15, 2019, the State renewed its motion to continue. Following argument and testimony concerning the State's extensive, unsuccessful attempts to locate Woodson, the circuit court determined that defendant had been in custody for 101 days, which took into consideration a period of delay attributable to the defense from February 21, 2019, to March 5, 2019. In addition, the court, declining the State's request for an additional 60 days, granted the State a continuance until May 28,

4

2019. According to the court, its ruling did not violate the original 120-day requirement set forth in the speedy trial statute. The court released the previously selected jury and informed the parties that a new jury would be selected on May 28, 2019, at defendant's scheduled jury trial.

¶ 15 On May 28, 2019, before jury selection began, the State, again, moved to continue because, despite the assistance of several state agencies, the State was unable to locate Woodson.[2] Following argument by the parties, the circuit court denied the State's motion to continue, declining to extend past the speedy trial term. The State subsequently moved to nol-pros defendant's case. Defense counsel did not object. The court granted the State's motion, and defendant's case (No. 19-CF-6) was dismissed with leave to reinstate. Defendant was subsequently released from custody.

¶ 16 On August 5, 2019, the State charged defendant with five counts of first degree murder in No. 19-CF-40 for the death of Stacy A. Carter-Gonzalez on January 11, 2019. See *supra* ¶ 4. That same day, the circuit court issued a warrant for defendant's arrest, and defendant was taken into custody on August 6, 2019. Defendant's previous defense counsel took over defendant's representation.

¶ 17 On August 27, 2019, defendant filed a motion to dismiss the charges, arguing that the 120-day speedy trial clock had expired. Defendant claimed that he had been in custody initially from January 23, 2019, until May 28, 2019, when the charges against

---

[2]The State requested leave to supplement the record on September 9, 2020, to include documents from Woodson's case (No. 19-MR-41), which included a "petition for adjudication of indirect criminal contempt (serious)"; plea of guilty, signed by Woodson; an "order of adjudication (serious) indirect criminal contempt" of court for failure to appear as a material witness in defendant's case; and the circuit court's order sentencing Woodson to seven years in the Illinois Department of Corrections. This court subsequently granted the State's motion to supplement on September 29, 2020.

him were dismissed. At that time, defendant argued that the speedy trial clock was tolled at 115 days. Defendant next argued that he was arrested on August 6, 2019, after the State refiled the same charges in No. 19-CF-40, causing the speedy trial clock to resume running again. Accordingly, because he had not yet been placed on trial for the charges in No. 19-CF-40, defendant argued that he had spent more than 120 days in custody awaiting trial.

¶ 18   Following a hearing on August 27, 2019, the circuit court granted defendant's motion to dismiss. The record reflects that the court's order granting defendant's motion to dismiss is in the form of a docket entry; however, the docket entry does not contain the court's reasoning, and the transcript of the August 27, 2019, hearing is not contained in the record on appeal. Nevertheless, the parties agree on appeal that the court found, after combining defendant's periods of incarceration in Nos. 19-CF-6 and 19-CF-40 and then subtracting delays attributable to defendant, that defendant had been in custody for 128 days. Thus, according to the court, defendant's statutory right to a speedy trial had been violated.

¶ 19   On August 30, 2019, the State filed a timely notice of appeal from the circuit court's August 27, 2019, order granting defendant's motion to dismiss. Shortly thereafter, the State withdrew its notice of appeal and timely filed a motion to reconsider on September 11, 2019. The State, with reliance on section 103-5(a) of the Code, argued that the court had erred (1) by combining the two periods of incarceration in Nos. 19-CF-6 and 19-CF-40 and (2) in calculating the days in which delay was attributable to defendant. In its memorandum, the State argued that, pursuant to section 103-5(a) of the

Code, the speedy trial clock started at day zero when defendant was taken into custody on August 5, 2019,[3] for the charges filed in No. 19-CF-40.

¶ 20    On November 13, 2019, following a hearing, the circuit court denied the State's motion to reconsider. The State subsequently filed a timely notice of appeal and supporting affidavit, asserting that the court's order substantially impaired the State's ability to prosecute defendant's case.

¶ 21                                  II. Analysis

¶ 22    The sole issue on appeal is whether defendant's motion to dismiss, based on speedy-trial provisions of section 103-5(a) of the Code, should have been denied by the circuit court. The State argues that defendant's speedy trial clock stopped when the State moved to nol-pros the charges against defendant in No. 19-CF-6, and the clock restarted at zero when defendant was taken into custody for the charges later filed in No. 19-CF-40. As such, the State asserts that the court erred by combining the days defendant had spent in custody in both No. 19-CF-6 and No. 19-CF-40 when it concluded that defendant's statutory right to a speedy trial had been violated. We agree with the State.

¶ 23    In Illinois, a defendant possesses both constitutional and statutory rights to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5 (West 2016). Section 103-5 of the Code sets forth the time frame during which the State must bring a criminal defendant to trial. The provisions set forth in subsections (a) and (b) of section 103-5 of the Code state, in pertinent part, as follows:

---

[3]The State claimed in its memorandum that defendant was arrested and taken into custody on August 5, 2019; however, the warrant of arrest is signed by the sheriff having executed the warrant by arresting defendant on August 6, 2019.

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record. The provisions of this subsection (a) do not apply to a person on bail or recognizance for an offense but who is in custody for a violation of his or her parole, aftercare release, or mandatory supervised release for another offense.

The 120-day term must be one continuous period of incarceration. In computing the 120-day term, separate periods of incarceration may not be combined. If a defendant is taken into custody a second (or subsequent) time for the same offense, the term will begin again at day zero.

(b) Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant ***.

For purposes of computing the 160[-]day period under this subsection (b), every person who was in custody for an alleged offense and demanded trial and is subsequently released on bail or recognizance and demands trial, shall be given credit for time spent in custody following the making of the demand while in custody." 725 ILCS 5/103-5(a), (b) (West 2016).

The provisions of section 103-5(a) of the Code are to be liberally construed in favor of the defendant, and the State shall not be allowed to manipulate criminal proceedings or

8

purposefully evade the operation of the provisions set forth in this section. *People v. Van Schoyck*, 232 Ill. 2d 330, 335 (2009). Here, because the parties dispute the proper application of section 103-5 of the Code, this court must interpret its pertinent provisions.

¶ 24    We review issues involving statutory interpretation *de novo*. *People v. Sanchez*, 2013 IL App (2d) 120445, ¶ 18. The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Blair*, 215 Ill. 2d 427, 442 (2005). The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *People v. Clark*, 2019 IL 122891, ¶ 20. If possible, the court must give effect to every word, clause, and sentence, and it must not read a statute so as to render any part meaningless or superfluous. *People v. Ellis*, 199 Ill. 2d 28, 39 (2002). When the statute's language is clear, it will be given effect without resort to tools of interpretation (*Petersen v. Wallach*, 198 Ill. 2d 439, 445 (2002)), and a court must not depart from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express. *Ellis*, 199 Ill. 2d at 39.

¶ 25    Section 103-5(a) of the Code provides that separate periods of incarceration may not be combined when calculating the 120-day term. Rather, the calculation must be based on one continuous period of incarceration. In addition, if a defendant is taken into custody a second or subsequent time for the same offense, the 120-day term starts again at day zero. Here, defendant initially spent 101 days in custody, as determined by the

9

circuit court on May 15, 2019,[4] until May 28, 2019, when the circuit court granted the State's motion to nol-pros in No. 19-CF-6. It is important to note that the effect of the State's motion to nol-pros is "to terminate the charge to which it is entered and to permit the defendant to go wherever he pleases." *People v. Watson*, 394 Ill. 177, 179 (1946). Thus, by virtue of the State's motion, the charges against defendant for five counts of first degree murder in No. 19-CF-6 were terminated on May 28, 2019. The State then charged defendant with the same offenses in No. 19-CF-40 on August 5, 2019, and defendant was taken into custody for a second time on August 6, 2019. Accordingly, defendant was subject to two separate periods, not one continuous period, of incarceration for the same offenses.

¶ 26    Despite this, defendant asserts that the plain and ordinary meaning of section 103-5(a) of the Code demonstrates that the legislature intended for the speedy trial clock to restart at zero when defendants are taken into custody more than once during the "*same and continuous prosecution.*" (Emphasis in original.) However, the statute neither states defendant's proposition nor provides any express language that would indicate this type of application. Without such express language, we must read the provision within the plain language of the statute as a whole and refrain from including conditions not clearly expressed by the legislature. See *Schlutz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010) ("A court may not add provisions that are not found in a statute, nor may it depart from a statute's plain language by reading into the law exceptions, limitations, or

---

[4]On May 14, 2019, the circuit court stated that defendant had been in custody for 103 days; however, the next day, on May 15, 2019, the court stated the total days in custody, excluding delay attributable to defendant, was 101 days.

10

conditions that the legislature did not express."); see also *People v. Shinaul*, 2017 IL 120162, ¶ 17 ("Absent express language in the statute providing an exception, we will not depart from the plain language and read into the statute exceptions, limitations, or conditions that the legislature did not express."). Accordingly, we will not depart from the plain language of the statute to add provisions that are not found in the statute.

¶ 27   Additionally, defendant, with reliance on *People v. Castillo*, 372 Ill. App. 3d 11 (2007), and *People v. Decatur*, 191 Ill. App. 3d 1034 (1989), argues that "it simply goes against reason that the legislature would intend" for defendants in custody to be provided less protection under subsection (a), with the speedy trial clock restarting at day zero in the event the State moves to nol-pros, than defendants subject to subsection (b), where the speedy trial clock is tolled when a defendant is released on bond or recognizance. In making this argument, defendant asserts that subsection (a) does not pertain to situations where the State moves to nol-pros. We cannot accept this argument.

¶ 28   First, this court will not depart from the plain language of the statute to read into law an exception, as defendant has requested, that subsection (a) does not pertain to situations where the State moves to nol-pros charges against a defendant. Because the statute does not expressly provide such an exception, it would be improper for this court to depart from the plain language of the statute in this instance. *Shinaul*, 2017 IL 120162, ¶ 17. Next, our supreme court has stated that "[w]hen the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts presume that the legislature acted intentionally and purposely in the inclusion or exclusion [citation], and that the legislature intended different meanings and results

[citation]." *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 24. Here, the legislature included language that courts may not combine separate periods of incarceration in subsection (a) but omitted such language in subsection (b). Had the legislature intended for courts to similarly compute the 120-day and 160-day terms in subsections (a) and (b), it would have expressed so in the statute. Accordingly, we must presume that the legislature acted intentionally and purposely in specifically stating that computing the 120-day term must be based on one continuous period of incarceration. Thus, because the language in subsection (a) is clear, this court must apply it as written (*Reda v. Advocate Health Care*, 199 Ill. 2d 47, 55 (2002) (citing *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997); see *Sassali v. Rockford Memorial Hospital*, 296 Ill. App. 3d 80, 83 (1998))) without resort to aids or tools of interpretation. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 29                                III. Conclusion

¶ 30    Accordingly, the circuit court erroneously dismissed defendant's case when it combined two separate periods of incarceration in calculating the 120-day speedy trial term under section 103-5(a) of the Code. Thus, the judgment of the court is reversed, and defendant's cause is remanded for further proceedings consistent with this order.


¶ 31    Reversed; cause remanded for further proceedings.