2019 IL App (2d) 180211
No. 2-18-0211
Opinion filed August 8, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* COMMITMENT OF SAMUEL RUTHERFORD | ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| | | No. 07-MR-683 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Samuel Rutherford, Respondent-Appellant). | | Honorable Paul M. Fullerton, Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, Samuel Rutherford, committed under the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq*. (West 2008)), appeals from the trial court's denial of his petition for discharge and the appointment of an independent evaluator. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    In 2002, respondent, then 16 years old, was adjudicated a delinquent minor for committing attempted aggravated criminal sexual assault (720 ILCS 5/8-4(a), 12-14(b)(i) (West 2002)) and aggravated criminal sexual abuse (*id.* § 12-16(c)(2)(i)) against an 8-year-old girl. He was sentenced to five years of probation. In March 2005, respondent admitted to violating the conditions of his probation and was committed to the Department of Juvenile Justice (DJJ) for an

indeterminate term under section 5-720 of the Juvenile Court Act of 1987 (705 ILCS 405/5-720 (West 2004)). He was released on parole in June 2006. In 2007, at the age of 20, respondent violated his parole conditions by committing frottage against a treatment center staff member on at least two occasions and was recommitted to the DJJ.

¶ 4    In May 2007, the State sought respondent's civil commitment under the Sexually Violent Persons Commitment Act. In June 2008, after consulting with his attorney, respondent stipulated to being a sexually violent person and to being committed to the care, control, and treatment of the Illinois Department of Human Services (DHS). After finding that respondent had waived his right to a jury trial, the trial court accepted his stipulation to commitment. In July 2009, the court heard evidence at a dispositional hearing, including testimony from respondent and two psychologists, and ordered respondent committed to institutional care in a secure facility.

¶ 5    In 2017, respondent received a statutorily required periodic reexamination to determine whether he had "made sufficient progress in treatment to be conditionally released" and whether his condition had so changed since his last periodic reexamination that he was "no longer a sexually violent person." 725 ILCS 207/55(a) (West 2016). The investigation was conducted by Dr. Richard Travis. Because respondent declined to participate in the investigation, Dr. Travis based his evaluation on respondent's criminal, DJJ, and DHS records.

¶ 6    In his evaluation report, Dr. Travis identified respondent's 2007 frottage offenses against a female counselor as his "predicate offense." The report explains that a predicate offense leads to a mental disorder diagnosis that becomes the basis for a subsequent legal determination, such as involuntary civil commitment.

¶ 7    Based on respondent's records and on generally accepted diagnostic criteria, Dr. Travis diagnosed respondent with "Pedophilic Disorder, Sexually Attracted to Both, Nonexclusive;

Frotteuristic Disorder; Other Specified Paraphilic Disorder, Zoophilia; Bipolar I Disorder, In Full Remission; and Antisocial Personality Disorder." Noting that respondent was 31 years old at the time of the reexamination, Dr. Travis analyzed his likelihood of recidivism using actuarial assessment tools that incorporate the relationship between age at release and sexual recidivism. Respondent scored in the highest of five risk categories on these actuarial instruments. Because respondent also presented many dynamic risk factors and treatment needs based on psychological traits, he "remain[ed] at a substantial probability to engage in acts of sexual violence."

¶ 8     Dr. Travis noted that the risk of sexual recidivism can be lowered by "successful completion of sexual offense specific treatment." However, since respondent had not participated in sex offender treatment since 2009, when he withdrew consent for treatment, "[n]o treatment-based risk reduction [was] warranted."

¶ 9     In conclusion, Dr. Travis stated: "Due to his mental disorders and assessed risk, [respondent] remains substantially probable to engage in acts of sexual violence. His condition has not changed since the most recent periodic reexamination [in 2016] such that he is no longer a sexually violent person." He further concluded that respondent "has not made sufficient progress in treatment to be Conditionally Released."

¶ 10    Following his 2017 reexamination, respondent petitioned for discharge and the appointment of an independent evaluator, maintaining that "he no longer has a mental disorder, and that any mental disorder he may previously have had no longer creates a substantial probability that he will engage in acts of sexual violence." Respondent further asserted, citing an *amicus* brief in *Miller v. Alabama*, 567 U.S. 460 (2012), that, due to recent studies on differences in juvenile and adult brains, a change has occurred in the "professional knowledge and methods

used to evaluate a person's mental disorder or risk of reoffending." The trial court denied the petition, finding that respondent had not met his burden of showing a change in his condition and that the studies he cited were likely known to the State's evaluators.

¶ 11                                    II. ANALYSIS

¶ 12    Respondent contends that the trial court erred in denying his petition for discharge and the appointment of an independent evaluator. We review for an abuse of discretion the trial court's decision not to appoint an independent evaluator. *People v. Botruff*, 212 Ill. 2d 166, 176 (2004). Whether there is probable cause to believe that respondent's condition has so changed that he is no longer a sexually violent person is reviewed *de novo*. *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶ 49.

¶ 13    Respondent concedes that the issues of appointing an independent evaluator and probable cause to proceed to a discharge hearing "necessarily became intertwined" at the hearing. Thus, he argues that he was deprived of an adequate defense on both issues for the same reason: the studies on differences in juvenile and adult brains were not used to evaluate his mental disorder or the risk of his reoffending. Respondent's argument, however, is a counterfactual enthymeme. Based on the studies, respondent posits that, as juveniles' brains mature, they evince "fewer impulses toward reckless and criminal behavior and increased ability to restrain such impulses." Respondent presumes that there are no intervening facts that would contradict that conclusion in this case. But respondent omits that, as an adult (presumably with an adult mind), he committed frottage against a treatment center employee on at least two occasions. Positing probabilities based upon a juvenile brain when the salient acts were done as an adult is unavailing. Furthermore, because respondent did not participate in treatment after 2009, he can provide no factual premise for his claimed change.

¶ 14   We also note that respondent's reliance on a brief filed in *Miller* is misplaced because *Miller* addresses punitive state action, not civil commitment. See *In re Detention of Samuelson*, 189 Ill. 2d 548, 559 (2000) ("proceedings under the Sexually Violent Persons Commitment Act are civil rather than criminal in nature"). In *Miller*, the Court held that mandatory life imprisonment without parole for crimes committed before the offenders turned 18 violates the eighth amendment's prohibition on cruel and unusual punishments. *Miller*, 567 U.S. at 479. Commitment under the Sexually Violent Persons Commitment Act, unlike life imprisonment without parole, contemplates the possibility of rehabilitation and discharge. See *In re Detention of Stanbridge*, 2012 IL 112337, ¶¶ 71-76 (identifying the relevant discharge inquiry, which includes change in the committed person or in the evaluative or legal standards). In rejecting treatment, respondent rejected rehabilitation and forfeited the opportunity to show that he had changed.

¶ 15   Finally, the studies cited in the brief are inapplicable here for the additional reason that they are inconclusive. For example, one study "found that only 16% of young adolescents who scored in the top quintile on a juvenile psychopathy measure would eventually be assessed as psychopathic at age 24." Donald Lynam et al., *Longitudinal Evidence That Psychopathy Scores in Early Adolescence Predict Adult Psychopathy*, 116 J. Abnormal Psychol. 155, 160 (2007). Having refused to participate in treatment or in his 2017 reexamination, respondent has no evidence to back a claim that he has so changed with age that he is no longer a sexually violent person. He does not benefit from citing a study indicating that the mental disorders of 16% of those sampled did not change as their brains developed.

¶ 16                               III. CONCLUSION

¶ 17   For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 18     Affirmed.

## No. 2-18-0211

| | |
|---|---|
| **Cite as:** | *In re Commitment of Rutherford*, 2019 IL App (2d) 180211 |
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 07-MR-683; the Hon. Paul M. Fullerton, Judge, presiding. |
| **Attorneys for Appellant:** | William G. Worobec, of Law Office of William G. Worobec, P.C., of Wheaton, for appellant. |
| **Attorneys for Appellee:** | Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Michael M. Glick and Lindsay Beyer Payne, Assistant Attorneys General, of counsel), for the People. |