2024 IL App (3d) 230334

Opinion filed May 7, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* COMMITMENT OF MICHAEL HANSEN | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| | ) | Bureau County, Illinois, |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-23-0334 |
| | ) | Circuit No. 06-MR-35 |
| v. | ) | |
| | ) | |
| Michael Hansen, | ) | Honorable |
| | ) | James Andreoni, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE DAVENPORT delivered the judgment of the court, with opinion.
Justices Holdridge and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, Michael Hansen, appeals from an order finding he remained a sexually violent person under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2022)). We affirm.

¶ 2                                         I. BACKGROUND

¶ 3    In 1992, respondent was convicted of aggravated criminal sexual assault and sentenced to 23 years in prison. His sentence ran concurrently with a prior sentence for aggravated criminal sexual abuse and consecutively to a prior sentence for drug-related offenses.

¶ 4 In 2006, the State petitioned the court to find respondent a sexually violent person under the Act. After a bench trial, the court found respondent a sexually violent person and, in 2009, ordered him committed to the custody of the Department of Human Services (DHS) Treatment and Detention Facility in Rushville (TDF-Rushville). Respondent did not appeal his initial commitment.

¶ 5                    A. Petition for Discharge

¶ 6 In August 2021, respondent petitioned for discharge from TDF-Rushville. 725 ILCS 207/65 (West 2020). His petition averred he was 75 years old, suffered from poor health, and his most recent periodic reexamination (*id.* § 55) did not address his likelihood of reoffending. The petition also averred that respondent had served his sentence "two times over," having spent 14 years in the Illinois Department of Corrections and 15 years at TDF-Rushville.

¶ 7                    B. Expert Testimony at Trial

¶ 8 In May 2023, the court held a bench trial on respondent's petition. Respondent was 77 years old at the time of trial. The State called Dr. Deborah Nicolai to testify, and respondent called Dr. Edward Smith to testify. No other witnesses testified.

¶ 9                    1. *Dr. Nicolai's Testimony*

¶ 10 Dr. Nicolai testified as follows. She is a clinical and forensic psychologist who performs sex offender evaluations under a service contract with the Office of the Attorney General. In February 2023, she interviewed respondent, and in March 2023, she prepared a psychiatric evaluation report opining respondent continued to meet the criteria of a sexually violent person under the Act. She diagnosed respondent with pedophilic disorder, nonexclusive type, sexually attracted to both; cannabis use disorder, provisional; and alcohol use disorder in sustained remission of controlled environment. Her report considered respondent's criminal history,

2

spanning the years 1962 to 1992, during which respondent had been either convicted of or charged with sex offenses against children between the ages of one-and-a-half and nine years old. The report also considered Dr. Nicolai's interview with respondent, prior expert evaluations, and respondent's treatment and disciplinary records. Respondent's records revealed he never participated in sex offender treatment offered at TDF-Rushville.

¶ 11     Dr. Nicolai used three actuarial instruments to determine respondent's risk of sexual recidivism: Static-99R, Static-2002R, and STABLE-2007. The Static-99R yielded a score of 2 ("average risk"), the Static-2002R yielded a score of 5 ("above-average risk"), and the STABLE-2007 yielded a score of 13 ("high density of criminogenic needs"). When the STABLE-2007 score is combined with either the Static-99R or Static-2002R score, it yields a composite score placing respondent in the "above-average risk" category.

¶ 12                                 *2. Dr. Smith's Testimony*

¶ 13     Dr. Smith testified as follows. He is a psychologist and licensed sex offender evaluator at DHS who has been evaluating respondent for "a number of years now." Most recently, in 2021 and 2022, he interviewed respondent and prepared psychiatric evaluation reports based on respondent's criminal, disciplinary, and mental health records. Dr. Smith diagnosed respondent with "pedophilic disorder and other specified personality disorder with antisocial traits." In November 2021, he prepared a report opining respondent remained a sexually violent person under the Act. In December 2022, he prepared a report opining, for the first time, that respondent did not meet the criteria of a sexually violent person under the Act. Dr. Smith acknowledged the only reason his opinion shifted from previous years was respondent's age "coupled with the fact that *** [respondent] hasn't had any violations at the facility since 2021."

3

¶ 14　　　　Dr. Smith conducted a risk analysis using the Static-99R and considered "additional risk factors found in the scientific literature." He did not use other actuarial instruments such as the STABLE-2007. Moreover, despite forgoing the Static-2002R, Dr. Smith agreed "it would add incremental validity to a risk assessment." He limited his use to the Static-99R to allow for an "apples to apples" comparison from year to year. In both 2021 and 2022, the Static-99R yielded a score of 2 ("average risk").

¶ 15　　　　　　　　　　　　　　　　C. The June 2023 Decision

¶ 16　　　　The trial court issued its decision on June 22, 2023. The court noted, preliminarily, that respondent petitioned exclusively for discharge under section 65 of the Act (725 ILCS 207/65 (West 2020)), and not for conditional release under section 60 of the Act (*id.* § 60). In the court's view, the experts' difference of opinion "boiled down" to how much weight to assign to respondent's age and whether the STABLE-2007 test should have been used. Ultimately, the court found Dr. Nicolai's evaluation more thorough and concluded the State established respondent remained a sexually violent person under the Act. The court emphasized respondent "is his own worst enemy" and remains a sexually violent person "because he has absolutely refused all treatment."

¶ 17　　　　Nevertheless, the court recognized respondent's advanced age and stated it "doesn't believe that [the Act] is intended to keep someone in jail for the rest of their lives." Accordingly, the court indicated its order would require (1) respondent's return to DHS custody and (2) the preparation of a conditional release plan. The court further stated,

> "I'm not making any ruling until I see what the proposed conditional release
> plan is, but my verdict is that the State has proven that [respondent] remain[s] a

4

sexually violent person, and pursuant to the authority that I have under [section 65(b)(3) of the Act], I'm ordering the [DHS] to prepare a conditional release plan." Section 65(b)(3) of the Act provides, "If the court or jury is satisfied that the State has met its burden of proof under paragraph (b)(2) of this Section,[1] the court may proceed under Section 40 of this Act to determine whether to modify the person's existing commitment order." 725 ILCS 207/65(b)(3) (West 2022). Thereafter, the court discussed respondent's appeal rights, stating in relevant part,

"*** I'll defer to the attorneys on this—I'm assuming—obviously, I'm making my judgment today.

***

*** [A]nd, again, I'm asking the attorneys—correct me if I'm wrong—if [respondent] wants to appeal from my decision, *** he would need to do that within 30 days. I don't think he—and, again, correct me if I'm wrong—I don't think he can wait until we get the conditional release plan and then assume that his 30-day right to appeal begins to run at that time."

Both attorneys agreed with the court's assessment.

¶ 18     The court entered the following written order the same day:

"IT IS HEREBY ORDERED:

(1) The State has met its burden in proving that the respondent remains a sexually violent person;

(2) Respondent shall be placed on conditional release;

---

[1]"[T]he State has the burden of proving by clear and convincing evidence that the committed person is still a sexually violent person." 725 ILCS 207/65(b)(2) (West 2022).

(3) This matter is continued to Friday, August 25 at 11:00 am for presentment of a conditional release plan."

On July 20, 2023, respondent filed a notice of appeal from the court's June 22, 2023, order.

¶ 19                          D. Approval of Conditional Release Plan

¶ 20        On August 1, 2023, respondent agreed to an 11-page conditional release plan prepared by the DHS. Under the plan, respondent promised to abide by 68 conditions of release. On August 25, 2023, the State filed the conditional release plan, and the court entered an agreed order approving the plan and conditionally releasing respondent from TDF-Rushville. Respondent did not file a subsequent notice of appeal.

¶ 21                                      II. ANALYSIS

¶ 22        Respondent argues the trial court's denial of his petition for discharge was in error. Accordingly, he requests we overturn all relevant portions of the June 2023 ruling and either remand this case for a new hearing or find the discharge petition should have been granted.

¶ 23        The State urges us to dismiss this appeal for lack of jurisdiction. Alternatively, it argues we should affirm the finding that respondent remains a sexually violent person under the Act.

¶ 24                                      A. Jurisdiction

¶ 25        We begin by considering our jurisdiction. *Legacy Re, Ltd. v. 401 Properties Ltd. Partnership*, 2023 IL App (1st) 220855, ¶ 14 ("[T]he first issue we must resolve is whether *** we lack jurisdiction to hear this appeal."). Respondent maintains he filed a timely notice of appeal from a final order, and appellate jurisdiction is therefore proper under Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017). The State, in turn, argues we lack jurisdiction because the June 2023 order was not a final order.

6

¶ 26 Our jurisdiction is largely limited to appeals from final judgments. *Johnson v. Armstrong*, 2022 IL 127942, ¶ 19; Ill. Const. 1970, art. VI, § 6. And although our supreme court has enacted rules extending our jurisdiction over appeals from certain nonfinal judgments (see, *e.g.*, Ill. S. Ct. R. 307 (eff. Nov. 1, 2017)), those rules do not apply here. Accordingly, we lack jurisdiction to review the trial court's nonfinal orders (*Armstead v. National Freight, Inc.*, 2021 IL 126730, ¶ 20) and may only review its final judgments. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 27 For purposes of Rule 301, a final judgment is a determination on the issues presented by the pleadings that fixes the parties' rights absolutely and terminates the litigation on the merits such that, if affirmed, the only step remaining is the judgment's execution. *People v. Shinaul*, 2017 IL 120162, ¶ 10; *In re Application of the County Collector*, 395 Ill. App. 3d 155, 159 (2009). "[T]he test of finality lies in the substance and not in the form of the order." *Myers v. Myers*, 51 Ill. App. 3d 830, 837 (1977). A final judgment is complete in itself and enforceable by its own terms. *Impey v. City of Wheaton*, 60 Ill. App. 2d 99, 104 (1965). It does not require the court to reserve jurisdiction to further adjudicate matters of substantial controversy between the parties. *Id.*; *In re M.M.*, 337 Ill. App. 3d 764, 771 (2003). The court's reservation of jurisdiction, however, does not necessarily preclude the judgment's finality for appeal. *Impey*, 60 Ill. App. 2d at 103. For example, a judgment terminating the litigation on its merits is final and appealable despite the court's reservation of incidental matters for future consideration. *Id.*; *In re D.D.*, 212 Ill. 2d 410, 418 (2004).

¶ 28 On June 22, 2023, the trial court found respondent remained a sexually violent person under the Act, required his return to DHS custody, and ordered the DHS to prepare a conditional release plan for its review. In so doing, the court issued a two-part decision.

7

¶ 29     The first part of the decision terminated the discharge proceeding on its merits by finding respondent remained a sexually violent person. This part of the court's ruling was a clear denial of respondent's discharge petition and left out no matters that could later disturb the outcome of the petition.

¶ 30     The jurisdictional question is somewhat complicated by the decision's second part, in which the court found respondent was an appropriate candidate for conditional release due to his age and continued the matter for a potential modification of his commitment order (725 ILCS 207/40 (West 2022)). This part of the decision was entered *sua sponte*. The court explained that although respondent's petition sought discharge (*id.* § 65), not conditional release (*id.* § 60), it believed section 65(b)(3) allowed the court to order the DHS to prepare a conditional release plan for its consideration. Section 65(b)(3) provides that upon finding the State has proven the petitioner seeking discharge remains a sexually violent person, "the court may proceed under Section 40 of this Act to determine whether to modify the person's existing commitment order." *Id.* § 65(b)(3). Section 40, in turn, provides, "If the court finds that the person is appropriate for conditional release, the court shall notify the [DHS,]" which will then have 60 days to prepare and present a plan to the court for its approval. *Id.* § 40(b)(3).

¶ 31     The court's *sua sponte* order was a nonfinal order as it did not adjudicate the conditional release issue and merely continued the case for a final resolution. Although the court apprised respondent of his eligibility for conditional release, it did not provide any guarantees or dictate any conditions for release. The court declared, "I'm not making any ruling until I see what the proposed conditional release plan is." Thus, the court retained jurisdiction to determine whether it would grant conditional release.

¶ 32 In short, while the first part of the decision finally settled respondent's petition for discharge, the second part was a nonfinal order which initiated an expedited proceeding toward alternative relief neither party had requested. The State argues, on appeal, that the nonfinal nature of the court's *sua sponte* order negates the immediate appealability of the court's decision denying respondent's discharge petition. We disagree.

¶ 33 Illinois courts have repeatedly defined a final judgment as a determination *on the issues presented by the pleadings* that fixes the parties' rights finally and absolutely. See, *e.g.*, *Shinaul*, 2017 IL 120162, ¶ 10; *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 47; *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 233 (2005); *Department of Central Management Services v. American Federation of State, County & Municipal Employees*, 182 Ill. 2d 234, 238 (1998); *Wold v. Bull Valley Management Co.*, 96 Ill. 2d 110, 112 (1983); *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982); *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 119 (1978). Here, the pleadings constituted nothing more than respondent's petition for discharge, filed in August 2021 and never amended thereafter. Respondent's petition presented a single issue: whether respondent was no longer a sexually violent person such that he could be discharged from commitment. The parties raised no other issues for the court to decide. By finding the State had met its burden of proving respondent remained a sexually violent person, the June 2023 decision disposed of the petition on its merits and resolved the only issue presented by the pleadings. We can only conclude that the denial of respondent's petition, comprising the pleadings in this matter, was a final judgment for purposes of Rules 301 and 303.

¶ 34 We recognize the court initiated the conditional release proceeding on the same day it terminated the discharge proceeding—and that it did so by invoking section 65 of the Act, which governs discharge proceedings. However, where neither party petitioned for conditional release,

9

the court-initiated proceeding fell outside the scope of the pleadings and constituted a separate proceeding altogether. Crucially, the sudden prospect of conditional release did not undermine the finality of the June 2023 decision denying respondent's discharge petition. See *Impey*, 60 Ill. App. 2d at 103 (the court's reservation of jurisdiction does not necessarily preclude the judgment's finality for appeal). No matter the outcome of the conditional release proceeding, respondent would remain "undischarged." See 725 ILCS 207/40(b)(4) (West 2022) ("An order for conditional release places the person in the custody, care, and control of the [DHS]."). Thus, despite the nexus between the proceedings, the conditional release proceeding did not preclude the June 2023 decision's finality for appeal.

¶ 35 Notably, the record is devoid of any indication the parties or the court ever considered including Rule 304(a) language in the court's written order. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Rule 304 applies to "Appeals From Final Judgments That Do Not Dispose Of An Entire Proceeding." *Id.* The rule does not apply to this appeal. The June 2023 decision disposed of the entire discharge proceeding, where *only one claim* was ever in contention. This further supports our conclusion that the June 2023 decision terminated the litigation on its merits, leaving no matters related to respondent's discharge petition for the court to decide.

¶ 36 In summary, the June 2023 decision was final and appealable as it related to respondent's discharge petition, which represented the entirety of the pleadings in this matter. The decision terminated the discharge proceeding on its merits and initiated a conditional release proceeding *sua sponte*. Although the two proceedings were temporally related, they did not constitute a single proceeding. The two proceedings never coexisted, and the conditional release proceeding, which was never requested by either party, had no bearing on the outcome of the discharge proceeding.

Thus, because respondent appealed the result of the discharge proceeding within 30 days of the June 2023 decision, this court has jurisdiction to decide the appeal.

¶ 37                                B. Petition for Discharge

¶ 38        Respondent argues the trial court erred in denying his petition for discharge. We may not disturb a trial court's decision concerning a petition for discharge unless it is against the manifest weight of the evidence. *In re Commitment of Sandry*, 367 Ill. App. 3d 949, 978 (2006); *People v. Hall*, 2017 IL App (3d) 160541, ¶ 41. "A decision is contrary to the manifest weight of the evidence only if an opposite conclusion is clearly apparent." *Sandry*, 367 Ill. App. 3d at 978. The manifest-weight standard affords great deference to the trial court. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). Under this standard, we may not reweigh the evidence or make an independent determination of the facts. *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 59.

¶ 39        Respondent argues the evidence overwhelmingly indicates he is no longer a sexually violent person. He asks that we consider only Dr. Smith's opinion and discard the opinion of Dr. Nicolai, who "completed only 500 sexually violent persons evaluations" and whose testimony was "self-serving" given her employment with the Attorney General's office. The State, in response, argues Dr. Nicolai thoroughly explained her risk analysis, and the trial court reasonably credited her opinion and found it clearly and convincingly established that respondent remained a sexually violent person.

¶ 40        We do not have the luxury of limiting our review to Dr. Smith's testimony. Where conflicting expert testimony is presented at trial, it is the trier of fact's duty to resolve that conflict. *Hallowell v. University of Chicago Hospital*, 334 Ill. App. 3d 206, 212 (2002). "[T]he appellate court cannot substitute its judgment on questions of fact fairly submitted, tried, and determined from the conflicting evidence." *Wilson v. Dande*, 2024 IL App (5th) 220552, ¶ 63. The trial court

11

found Dr. Nicolai's evaluation more thorough than Dr. Smith's evaluation. This conclusion was not against the manifest weight of the evidence. Dr. Nicolai's risk analysis relied on three actuarial instruments, while Dr. Smith's analysis relied on only one. Indeed, even Dr. Smith acknowledged that adding another actuarial instrument "would add incremental validity to a risk assessment."

¶ 41    Moreover, Dr. Smith acknowledged the only reason his opinion shifted from previous years was respondent's age coupled with respondent's lack of violations at TDF-Rushville since his most recent evaluation. The trial court considered Dr. Smith's reasoning but also considered Dr. Nicolai's additional tests and respondent's refusal to participate in any rehabilitation programs offered at TDF-Rushville. See *In re Commitment of Rutherford*, 2019 IL App (2d) 180211, ¶ 14 ("In rejecting treatment, respondent rejected rehabilitation and forfeited the opportunity to show that he had changed."). We may not reweigh the evidence. *Ahmed*, 2018 IL App (1st) 171534, ¶ 59. The trial court's finding that respondent remained a sexually violent person, notwithstanding his age, was a reasonable conclusion.

¶ 42    In view of the record, it is not clearly apparent that respondent is no longer a sexually violent person. The denial of his discharge petition was not against the manifest weight of the evidence.

¶ 43    III. CONCLUSION

¶ 44    The judgment of the circuit court of Bureau County is affirmed.

¶ 45    Affirmed.

12

***In re Commitment of Hansen***, 2024 IL App (3d) 230334

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Bureau County, No. 06-MR-35; the Hon. James Andreoni, Judge, presiding. |
| **Attorneys for Appellant:** | Bradley P. Popurella, of Princeton, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Katherine M. Doersch and Aaron M. Williams, Assistant Attorneys General, of counsel), for the People. |