2024 IL App (1st) 231058

Fourth Division
Filed August 29, 2024

No. 1-23-1058

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| ENIDT MARTINEZ, | ) | Appeal from the |
|    Petitioner-Appellant, | ) ) | Circuit Court of Cook County |
| v. | ) ) | No. 2022 OP 78404 |
| GUILLERMO LEON, | ) ) | The Honorable Marina Ammendola, |
|    Respondent-Appellee. | ) ) | Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1 An express goal of the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/101 to 401 (West 2022)) is to ensure "that victims are not trapped in abusive situations by *** financial dependence." *Id.* § 102(4). One of the ways the Domestic Violence Act advances that goal is by authorizing courts entering an order of protection to require, under certain circumstances, the respondent to make temporary child-support payments to the petitioner while the order is in force. *Id.* § 214(b)(12). In this case, Enidt Martinez sought that remedy as part of an order of protection against Guillermo Leon, with whom she had an infant child. Leon appeared at a hearing where he was served with her petition and given notice of the date on which the court would decide whether to enter a plenary order of protection. After Leon failed to appear for that hearing, Martinez asked the court to enter the plenary order by default. The court entered a plenary

order of protection, but it declined to enter Martinez's proposed temporary child support order, first because the court believed that Leon had not been given adequate notice of the proposed order and then because it deemed the matter more appropriately decided in a distinct proceeding in the Domestic Relations Division. For the reasons that follow, we hold that the court erred when it denied Martinez's request for temporary child support on that basis.

¶ 2                                I. BACKGROUND

¶ 3      Martinez filed a *pro se* petition for an order of protection against Leon in October 2022. She alleged that Leon had physically abused her multiple times, including at least two occasions in the preceding weeks where he had punched her while she was holding their six-month-old daughter. In her petition, Martinez sought several remedies, including exclusive possession of their shared residence, physical care and possession of both their infant daughter and Martinez's older daughter (from a previous relationship), temporary legal custody of both children, and temporary child support payments amounting to $200 every two weeks.

¶ 4      Consistent with the local rules, the petition was assigned to the Domestic Violence Division. See Cook County Cir. Ct. G.O. 1.2, 2.1(g) (Sept. 15, 2017); Cook County Cir. Ct. R. 22.4(A) (Dec. 29, 2010). The court entered an emergency order of protection on October 18, and a summons was issued for Leon at an address in Bensenville.[1] The emergency order was set to expire on November 3, but it was extended to November 23, and an alias summons correcting an error in Leon's address was issued. The record contains a short form notification, which indicates that it was served on November 10 but is not accompanied by an affidavit of service. See 750 ILCS 60/222.10(d) (West 2022). On November 23, the emergency order was extended to December 14,

_____

[1]The emergency order did not include temporary child support, which is only available in plenary orders of protection. See 750 ILCS 60/217(a) (West 2022); *id.* § 218(a).

and an alias summons listing a new address for Leon in Niles was issued. The matter was continued to December 14 for a videoconference hearing on the status of service.

¶ 5        Leon appeared for the videoconference hearing on December 14. There is not a transcript of that hearing in the record, but it does contain the order entered at the hearing, which bears the notation "RESPONDENT SERVED IN OPEN COURT." The order also noted an e-mail address for Leon. The court set the matter for an in-person hearing on April 4, 2023, on whether to issue a plenary order, and it extended the emergency order of protection until then.

¶ 6        In the interim, Martinez secured counsel and, on February 7, 2023, sought leave to amend her petition. As relevant here, the amended petition only requested temporary child support for Martinez and Leon's daughter in common. Unlike the original petition, the amended petition did not request a particular support amount. The amended petition was supported by Martinez's affidavit, which averred, among other things, that she needed financial support from Leon for their daughter's expenses, that Leon earned $22.00 per hour working at Fresh Farm, and that she earned $15.50 per hour working at Chipotle. The motion to file an amended petition was noticed for a February 14 hearing. Per counsel's certificate, the notice and the motion, including the proposed amended petition, were served on Leon via e-mail on February 8. Leon did not appear for the February 14 motion hearing, and the court granted leave to file the amended petition.

¶ 7        Leon did not appear for the April 4 hearing on a plenary order of protection. On Martinez's motion, the court continued the case to April 13 for the "[e]ntry of [a] default [p]lenary [o]rder of [p]rotection." The next day, Martinez filed a motion asking the court to hold Leon in default, enter a two-year plenary order of protection containing all requested remedies, and enter an order requiring Leon to pay monthly child support through April 13, 2025. Attached to the motion was a proposed uniform order of support that would require Leon to pay $456.32 in monthly child

support, an amount just under a quarter of his net monthly income. Neither the motion nor its attachments included an evidentiary basis for those calculations, but the motion asserted that Martinez would give the court a copy of Leon's W-2 form at the upcoming hearing. The certificate of service indicates that the motion was served on Leon that day via e-mail.

¶ 8    Leon did not appear for the April 13 default hearing, which was held by videoconference. At the start of the hearing, counsel advised the court that he had given the court copies of the proposed order of protection and the proposed child-support order. The court responded, "Yeah, I'm not entering [a] uniform order of support in this proceeding, in this manner." During the ensuing discussion with counsel, the court emphasized that the Domestic Violence Division was "not the proper location for" the request for temporary child support, which "absolutely belong[ed] downtown in parentage court." The court also expressed reservations about whether Leon had been given adequate notice of the proposed support order. It observed that, although Leon had notice of the request for temporary child support in the original *pro se* petition, the proposed order had been filed fewer than two weeks before the default hearing and only as an attachment to the default motion rather than in a separate motion. It also noted the apparent lack of evidence supporting the proposed order. Rather than denying temporary child support outright, however, the court indicated that it would reserve making a ruling.

¶ 9    The court proceeded on the other requested remedies. After hearing testimony from Martinez, the court found that she was entitled to a plenary order of protection. Among other things, the court found that Martinez and Leon had a child in common and that both parties had signed a voluntary acknowledgment of paternity.[2] It entered a plenary order of protection that

---

[2]This finding was based on counsel's representation at the hearing that parentage was established "[b]y voluntary acknowledgment of paternity." During the hearing, however, the court noted that no

included all of the remedies Martinez sought other than temporary child support. The written order included a finding that "Respondent has received notice of Petitioner's request for an *Order of Protection*." (Emphasis in original.) The court set a hearing on temporary child support for May 12. It admonished counsel to "tighten up *** notice and the matters we discussed" and suggested that he send notice via both e-mail and regular mail.

¶ 10    Four days before the hearing, Martinez filed a bench memorandum concerning her request for temporary child support. The memorandum argued that a decision on temporary child support was necessary to avoid the risk of abuse that would arise if Martinez had to interact with Leon directly to obtain the necessary financial support for their daughter and because, in the absence of a pending case in the Domestic Relations Division, the court was not able to transfer the matter elsewhere. The memorandum also argued that Leon's general appearance in December 2022 satisfied the notice requirements that are statutory prerequisites to including temporary child support as a remedy in a plenary order of protection entered by default. Attached to the memorandum was an updated proposed uniform order for support that would require Leon to pay $769.21 per month through May 12, 2025. Also attached was a support obligation worksheet showing how that amount was calculated based on each parent's monthly income. Per the certificate of service, counsel for Martinez served the memorandum and attachments on Leon that same day via e-mail and by both regular mail and certified mail. The certificate listed addresses for Leon in both Bensenville and Niles.

¶ 11    At the hearing, which was held by videoconference and not attended by Leon, counsel for Martinez informed the court that Leon's income, as stated on the work sheet, was based on his W-2

---

voluntary acknowledgment had been presented to it. The record on appeal likewise contains neither an acknowledgment nor a birth certificate.

tax form for 2022, which they had obtained from his employer by subpoena. Otherwise, counsel stood on the memorandum. Reasoning that child-support matters were not appropriately decided in proceedings for orders of protection, the court declined to order temporary child support:

"THE COURT: Okay. This Court does not calculate child support under the Illinois Domestic Relations Act [*sic*] or the Uniform Order of Support Act [*sic*]. That's not what this court is for.

\* \* \*

The Court did not make findings as to this child support. This was a default on the petition regarding the safety issues. The absolute pressing issues.

This is a serious domestic violence case with serious pressing issues that allow the Petitioner to come into court, have an *ex parte* hearing, get an emergency order.

\* \* \*

This Respondent was served in open court on one day at one time. There's been no full and complete hearing on this. Petitioner was eligible for and did receive the protections under the Illinois Domestic Violence Act to secure her safety and the safety of the six-month old.

\* \* \*

She has a two-year order of protection for her safety. That was the emergency that brought her here. That's what this building is for."

Instead, the court found, Martinez's request for temporary child support "belong[ed]" in and "need[ed] to go [to the] Domestic Relations [Division] in its own case." It explained that, in a

- 6 -

domestic relations proceeding, there would be "a better statutory scheme for full and complete remedies" available for both Martinez and her daughter. It added that, unlike the Domestic Violence Division, which had neither "enough information nor the resources to manage, monitor, or enforce the provisions of the [domestic relations statutes] that are most applicable to this case," the Domestic Relations Division (and the State, through the state's attorney's office and the Department of Healthcare and Family Services) would be able to "address[ ] the needs for this child for the long term." It offered to "refer [Martinez] to the State's Attorney to file a case this afternoon," but it nevertheless declined to issue the temporary child-support order she was requesting in connection with the order of protection. After the hearing, the court entered a written order indicating that Martinez's request for temporary child support was "denied, without prejudice."

¶ 12    Martinez timely appealed. After Leon did not file an appellee's brief, we took the case on Martinez's appellant's brief and the record. We also granted a group of 18 organizations headed by The Domestic Violence Legal Empowerment and Appeals Project leave to file a brief as *amici curiae*.[3]

¶ 13                                II. ANALYSIS

¶ 14    On appeal, Martinez argues that the circuit court erred when it required her to provide additional notice to Leon before entertaining her request for temporary child support and by ultimately declining to include that remedy in the order of protection.

---

[3]The other *amici* are The Network: Advocating Against Domestic Violence, Prairie State Legal Services, Illinois Coalition Against Domestic Violence, Connections for Abused Women and Their Children, Ascend Justice, Land of Lincoln Legal Aid, Mujeres Latinas en Acción, Sarah's Inn, Family Rescue, Our Resilience, Anew: Building Beyond Violence and Abuse, Legal Aid Society for Metro Family Services, Apna Ghar, Chicago Appleseed Center for Fair Courts, the Chicago Council of Lawyers, YWCA Evanston/North Shore, and Life Span.

¶ 15    As a preliminary matter, we consider our jurisdiction. See *Village of Kirkland v. Kirkland Properties Holdings Co.*, 2023 IL 128612, ¶ 37. A plenary order of protection has been held to be a final, and therefore appealable, order. See *In re A.L.*, 2021 IL App (2d) 200437-U, ¶ 24 (citing *Scheider v. Ackerman*, 369 Ill. App. 3d 943, 945 (2006)); see Ill. Const. 1970, art. VI, § 6 (authorizing appeals as of right from final judgments); Ill. S. Ct. R. 301 (eff. Feb. 1, 1994) (same). We note that, when the circuit court declined to order temporary child support, it characterized its action as denying Martinez's request without prejudice. Based on the court's lengthy oral pronouncement, we understand that language to mean only that its denial was to have no preclusive effect in the event Martinez sought permanent child support in a separate domestic-relations case. At the same time, the court made it clear that it was rejecting Martinez's request for temporary child support as a remedy included in the plenary order of protection. An order is final if it decides the merits of the litigation such that there is nothing left to do but execute the judgment. *People v. Shinaul*, 2017 IL 120162, ¶ 10. "Accordingly, only an order which leaves the cause still pending and undecided is not a final order for purposes of appeal." *Id.* Although framed as a decision not to reach the merits of Martinez's request for temporary child support, the court's denial of that request left nothing pending and amounted to a denial of temporary child support in connection with the order of protection. See *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 350 (2002) ("[I]n determining whether an order is final, one should look to its substance and effect rather than to its form.") Because it was a final order in substance and effect, it was appealable. And even had it not been a final order, because orders of protection are injunctive in nature, it still would have been appealable under Illinois Supreme Court Rule 307(a) (eff. Nov. 1, 2017). *E.g.*, *In re Marriage of Doe*, 2024 IL App (1st) 230935, ¶ 28 (citing *In re Marriage of Fischer*, 228 Ill. App. 3d 482,

486-87 (1992)). In short, we are satisfied that the circuit court's notation that its denial of temporary child support was without prejudice does not impair our jurisdiction.

¶ 16    Before reaching the merits, we must also decide whether to dismiss this case as moot. While this appeal was pending, Martinez filed a petition for allocation of parental responsibilities in the Domestic Relations Division under case No. 2023-D-079759 requesting, among other things, an order for child support. On April 25, 2024, the court in that case entered a uniform order for support requiring Leon to pay child support, retroactive to April 5, 2022, until April 5, 2040.[4] Martinez concedes that this development renders moot her contention that the circuit court erred when it declined to order temporary child support. As a practical matter, the child support order in the domestic relations case makes irrelevant her request for temporary child support in this case, so we accept her concession. See *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116 (1992) ("An issue is moot if no actual controversy exists or where events occur which make it impossible for the court to grant effectual relief.").

¶ 17    Ordinarily, an appeal presenting only moot issues must be dismissed. See *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 21. The public interest exception to the mootness doctrine, however, allows reviewing courts to reach moot issues when three criteria are satisfied: (1) the issue presents a question "of a substantial public nature," (2) "an authoritative determination" is needed "for the future guidance of public officers," and (3) the question is likely to recur in the future. *In re Marriage of Eckersall*, 2015 IL 117922, ¶ 11. The exception is narrow, and it "requires a clear showing" that each of the three criteria have been met. *Id.* Here, they are.

---

[4]We may take judicial notice of public documents included in the records of other courts. *May Department Stores Co. v. Teamsters Union Local No. 743*, 64 Ill. 2d 153, 159 (1976).

¶ 18    First, this case presents a question of significant public interest. When it passed the Domestic Violence Act, our legislature decisively rejected the view that domestic violence is a matter only of private concern to the involved parties and expressly recognized that domestic violence is "a serious crime against the individual *and society*." (Emphasis added.) 750 ILCS 60/102(1) (West 2022). Following our representatives' lead and relying on the public interest in ensuring adherence to the Domestic Violence Act's provisions, which are designed to protect victims of domestic violence, Illinois courts have frequently reached otherwise moot issues under the public interest exception. *E.g.*, *Whitten v. Whitten*, 292 Ill. App. 3d 780, 784-85 (1997); accord *In re Marriage of Evans*, 2021 IL App (5th) 200426-U, ¶¶ 37-38. The questions presented by this case, moreover, implicate the Domestic Violence Act's goals of "provid[ing] immediate, effective assistance and protection" and "promptly entering" orders of protection. 750 ILCS 60/102(4), (5) (West 2022). We are satisfied that the public interest at stake is significant enough to invoke the exception.

¶ 19    Second, we perceive an unusual need for guidance. An express purpose of the Domestic Violence Act is to "[s]upport the efforts of victims of domestic violence to avoid future abuse," including by entering and enforcing court orders ensuring "that victims are not trapped in abusive situations by *** financial dependence." *Id*. § 102(4). This express purpose recognizes the reality that, in many cases, a victim cannot get out of an abusive situation without financial assistance. In other words, "financial remedies can be as much as a safety issue as a stay away order." Debra Pogrund Stark, *What's Law Got to Do With It? Confronting Judicial Nullification of Domestic Violence Remedies*, 10 Nw. J.L. & Soc. Pol'y 130, 154 (2015). As we are not aware of any published Illinois case addressing the availability of temporary child support as a remedy in orders

of protection, we believe authoritative guidance is needed to ensure that it does not become a remedy in name only.

¶ 20 Third, the question presented in this case will almost certainly continue to recur. In 2022, the most recent year for which data is readily available, more than 58,000 new cases were filed in Illinois under the "orders of protection" category (which also includes petitions for stalking no contact orders, firearms restraining orders, and civil no contact orders), including more than 17,000 new cases in Cook County alone. See Adm. Office of Ill. Courts, 2022 Statistical Summary, at 18, 160 (rev. Dec. 4, 2023), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources /ee461f13-58e4-4d3b-9803-4017c7549b6f/2022%20Annual%20Report%20Statistical%20 Summary.pdf [https://perma.cc/UP2G-3YJA]. It is not clear how many of these cases involved petitions for orders of protection under the Domestic Violence Act, but it is likely that the number is in the hundreds, if not more. And that is to say nothing of the unknowable number of impoverished or nonworking parents who never seek an order of protection because, in the absence of effective financial support, they prioritize their children's welfare over their own safety. See Dana Harrington Connor, *Financial Freedom: Women, Money, and Domestic Abuse*, 20 Wm. & Mary J. Women & L. 339, 357 (2014) ("The choice is clear for many women—feed, house, and clothe the children, even if it compromises her safety.").

¶ 21 Because the denial of temporary child support under the Domestic Violence Act satisfies all three criteria of the public-interest exception to mootness, we address this appeal on merits.

¶ 22 Orders of protection are governed by article II of the Domestic Violence Act. 750 ILCS 60/art. II (West 2022). Section 214(b) enumerates several remedies that may be included in an order of protection. One of those remedies is temporary child support:

"Order for payment of support. Order respondent to pay temporary support for the petitioner or any child in the petitioner's care or over whom the petitioner has been allocated parental responsibility, when the respondent has a legal obligation to support that person, in accordance with the Illinois Marriage and Dissolution of Marriage Act [(750 ILCS 5/101 *et seq.* (West 2022))], which shall govern, among other matters, the amount of support, payment through the clerk and withholding of income to secure payment. An order for child support may be granted to a petitioner with lawful physical care of a child, or an order or agreement for physical care of a child, prior to entry of an order allocating significant decision-making responsibility. Such a support order shall expire upon entry of a valid order allocating parental responsibility differently and vacating the petitioner's significant decision-making authority, unless otherwise provided in the order." *Id.* § 214(b)(12).

This provision is straightforward and unambiguous. It expressly authorizes courts entering orders of protection to order the respondent to pay temporary child support when the respondent has a "legal obligation to support that person."

¶ 23    We first consider whether Martinez satisfied the Domestic Violence Act's notice requirements for the entry of a default plenary order of protection that includes the remedy of temporary child support. Most remedies that are available for orders of protection may be ordered if the respondent merely has constructive notice of the underlying petition. *Id.* § 210(e). A handful of remedies, including temporary child support, require actual notice, which means they "may be granted only if respondent has been personally served with process, has answered or has made a

- 12 -

general appearance." *Id.* § 210(d). The prerequisites for entering those remedies by default appear to be even more stringent. Remedies requiring actual notice may only be included in a default plenary order if the "respondent has been served or given notice in accordance with subsection (a)" and the "respondent then fails to appear," either "as directed" by the summons or "on any subsequent appearance or hearing date agreed to by the parties or set by the court." *Id.* § 210(f)(1); see *id.* § 210(a) (requiring "a separate summons to be issued and served" in an action for an order of protection but permitting alternative methods of service, including service by notice, that are available when there is already another case pending).

¶ 24     We need not decide whether Leon's appearance at the December 14, 2022, videoconference hearing constituted a general appearance or whether a general appearance would satisfy section 210(f)'s requirement that the respondent first be "served or given notice in accordance with subsection (a)." *Id.* § 210(f)(1). Whatever the nature of that appearance, Leon was personally served at that hearing. True, personal service normally cannot be accomplished via videoconference because it ordinarily requires an in-person interaction: either "leaving a copy of the summons with the defendant personally" or, provided certain conditions are fulfilled, "leaving a copy" with a family member or resident "at the defendant's usual place of abode." 735 ILCS 5/2-203(a) (West 2022). But in October 2020, the Illinois Supreme Court entered an administrative order under which a respondent who appears for a remote proceeding and is read the operative terms of the order of protection is deemed to have been personally served with process. Ill. S. Ct., M.R. 30370 (eff. Oct. 27, 2020). While this case was pending in the circuit court, that order was codified (with minor stylistic changes) as Illinois Supreme Court Rule 102.1 (eff. Apr. 20, 2023). Rule 102.1(a) provides, in relevant part, as follows:

"Service of process of protective orders in any court proceeding. Where

respondent in a protective order case (defined as a proceeding arising

under the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101

*et seq.*) ***) appears in any court proceeding by telephone or video

conference, respondent shall be considered personally served, and no

further service of process shall be required, provided the operative terms

of the protective order are read to respondent in open court during the

remote court appearance." Ill. S. Ct. R. 102.1(a) (eff. Apr. 20, 2023).

The record here shows that Leon appeared remotely on December 14, 2022, and that he was "served in open court." Under the October 27, 2020, administrative order and Rule 102.1, that remote appearance qualified as personal service of process. Hence, the record shows that Leon was "served" on December 14, 2022. See 750 ILCS 60/210(f)(1) (West 2022). It also shows that, on that same date, the court set a hearing on whether to enter a plenary order of protection for April 4, 2023. Because Leon "failed to appear" for that "hearing date *** set by the court," the Domestic Violence Act authorized the entry by default of an order of protection that included temporary child support. *Id.* After that point, no additional notice was required.

¶ 25    The next question is whether the court properly declined to order temporary child support. Consistent with the expedited nature of actions for an order of protection, the court generally may not "transfer or decline to decide all or part of [a] petition." *Id*. § 212(a). As we have noted, temporary child support must be determined "in accordance with the Illinois Marriage and Dissolution of Marriage Act." *Id.* § 214(b)(12). Those provisions are lengthy and detailed, albeit neither impenetrable nor arcane. See 750 ILCS 5/505(a) (West 2022) (provisions governing determination of child support). Recognizing that decisions as to child support and similar family

law matters are often factually and legally complicated, the legislature crafted a limited exception to the general rule against abstention in order-of-protection cases:

> "Any court or a division thereof which ordinarily does not decide matters of child custody and family support may decline to decide contested issues of physical care, custody, visitation, or family support unless a decision on one or more of those contested issues is necessary to avoid the risk of abuse, neglect, removal from the State or concealment within the State of the child or of separation of the child from the primary caretaker." 750 ILCS 60/212(b) (West 2022).

Three things are clear from this provision. First, even if the court entering the order of protection would not usually decide child-support issues, it still has the authority to do so when asked to include temporary child support as a remedy in an order of protection. Second, the court only has discretion not to decide "contested issues," meaning that it is required to decide any uncontested issues involving temporary child support. Third, even when temporary child support is contested, the court must still decide the issue if necessary to protect the child from abuse, neglect, removal from the state, concealment, or separation.

¶ 26    In this case, the order of protection was entered by default. By definition, the request for temporary child support was uncontested, meaning that the circuit court had no discretion under section 212(b) to decline to rule on that requested remedy. As the exception was inapplicable, the court was not permitted to transfer or decline to decide whether to order temporary child support. See *id.* § 212(a). Under the straightforward terms of the statute, Martinez was entitled to a decision on the merits of the issue, and the court's failure to render one was error.

¶ 27    Martinez also contends that, even if the circuit court had properly declined to consider her request for temporary child support (which it only has discretion to do under section 212(b) if the request is contested and its timely resolution is not necessary to avoid the risk of abuse, neglect, removal, concealment, or separation), it was still required to "expressly reserve[ ]" that issue and "transfer [it] to the appropriate court or division." *Id.* § 212(b), (c). We observe that Martinez invited any alleged error by advising the circuit court that, even though the statute required it to reserve the issue of temporary child support and transfer that request to an appropriate division, there was no mechanism in place that allowed it to do so. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 33 (explaining that, under the rule of invited error, a party cannot claim error on appeal based on an action the trial court took at the party's request).

¶ 28    Nevertheless, we agree that, whenever a court exercises its discretion not to decide a request for temporary child support, it has a mandatory duty under section 212(b) and (c) to reserve the issue of temporary child support and take whatever actions might be necessary to transfer that issue to the appropriate court or division. It appears that a formal transfer mechanism was, in fact, available in the court below. Cook County Circuit Cour General Order 1.3(d) (Aug. 1, 1996) allows cases to be transferred from one division to another "for the more efficient disposition of litigation." Efficient disposition of petitions for orders of protection is the obvious policy animating section 212's transfer requirement, not to mention one of the purposes of the Domestic Violence Act. See 750 ILCS 60/102(2), (4) (West 2022). And Cook County Circuit Court Rule 22.4(c)(2) (Dec. 29, 2010) provides for transferring cases out of the Domestic Violence Division whether or not a related case is pending in the Domestic Relations Division. Regardless, section 212 is clear that, when a court is asked to order temporary child support as part of an order of protection, it

must either decide that request itself or reserve a decision and transfer the issue to another court for resolution. If the court is unable to effectuate a transfer for whatever reason, then the only option it has left is to decide the issue itself.

¶ 29    The remaining question is the appropriate relief. Permanent child support has already been ordered in the domestic relations case, so no purpose would be served by remanding for a determination on temporary child support. Instead, we simply vacate the denial of Martinez's request for temporary child support. As to all other remedies requested or ordered, the judgment of the circuit court is affirmed.

¶ 30                                III.  CONCLUSION

¶ 31    The circuit court's May 12, 2023, order denying Martinez's request for temporary child support is vacated. In all other respects, the order of protection is affirmed.

¶ 32    Affirmed in part and vacated in part.

***Martinez v. Leon*, 2024 IL App (1st) 231058**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2022-OP-78404; the Hon. Marina Ammendola, Judge, presiding. |
| **Attorneys for Appellant:** | Kristine M. Schanbacher and Emily C. Eggmann, Dentons US LLP, of Chicago, Kelly R. Graf, of Dentons US LLP, of Los Angeles, California, and Teresa A. Sullivan, William Jordan Crider, Benna Crawford, and Miriam Hallbauer, of Legal Aid Chicago, of Chicago, for appellant. |
| **Attorneys for Appellee:** | No brief filed for appellee. |
| *Amici curiae*: | Sarah Weber, Casey McClaren, and Elliott Bacon, of Katten Muchin Rosenman LLP, of Chicago, for *amici curiae* Domestic Violence Legal Empowerment and Appeals Project *et al.* |