2024 IL App (1st) 231923-U

THIRD DIVISION
December 18, 2024

No. 1-23-1923

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| ALEXSEI NORTON, | ) | Cook County |
| | ) | |
|     Petitioner-Appellant, | ) | |
| | ) | No. 16 D 3426 |
| and | ) | |
| | ) | |
| VALENCIA NORTON, | ) | Honorable |
| | ) | Julie B. Aimen, |
|     Respondent-Appellee. | ) | Judge Presiding. |

_____

     JUSTICE REYES delivered the judgment of the court.
     Justices Martin and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Dismissing appeal for lack of jurisdiction where the challenged circuit court order was not appealable.

¶ 2    Alexsei Norton (Alexsei) filed a petition for dissolution of his marriage to Valencia Norton (Valencia) in the circuit court of Cook County. In the judgment for dissolution of marriage entered in 2018, the circuit court awarded 50% of the marital portion of Alexsei's pension to Valencia. Alexsei subsequently retired from government employment and collected pension benefits commencing in October 2021.

¶ 3　In May 2022, the circuit court entered a Qualified Illinois Domestic Relations Order (QILDRO), which addressed Valencia's right to receive a portion of Alexsei's accrued benefits in a public employee retirement system (see 40 ILCS 5/1-119(a)(6) (West 2022)).　While Valencia received monthly payments of her portion of Alexsei's pension after the June 2022 effective date of the QILDRO, she argued that she was entitled to a retroactive award of two additional amounts: (1) her marital share of the monthly pension payments received by Alexsei between October 2021 and June 2022, and (2) her marital share of a lump sum cost-of-living adjustment (COLA) payment elected by Alexsei, which he received in December 2021.

¶ 4　On appeal, Alexsei contends that the circuit court erred in granting the retroactive relief. He also maintains that the circuit court erred in its calculation of the award to Valencia by failing to account for federal taxes already paid on his pension and COLA disbursements.　As discussed below, we dismiss this appeal for lack of jurisdiction.

¶ 5　　　　　　　　　　　　BACKGROUND

¶ 6　　　　　　　　　*Judgment for Dissolution and Pension Division*

¶ 7　Alexsei and Valencia married in 1998 and had two children.　When Alexsei filed a petition for dissolution of the marriage in 2016, he was a 46-year-old parole agent employed by the Illinois Department of Corrections, and Valencia was a 45-year-old public school teacher.

¶ 8　Following a trial, the circuit court entered a judgment for dissolution of marriage in February 2018 (dissolution order).　The dissolution order provided, in part, that Valencia was awarded 50% of the marital portion of Alexsei's pension with the State Employees' Retirement System (SERS).　The dissolution order further provided that "[s]aid allocation of Alexsei's Pension shall be pursuant to a [QILDRO] submitted hereinafter by Valencia" and that "Alexsei shall fully cooperate to execute any and all necessary documents and to have the [QILDRO]

entered by this Court." The dissolution order also included provisions which awarded Alexsei 50% of the marital portion of Valencia's pension with the Teachers' Retirement System.

¶ 9    On March 30, 2022, Valencia filed a motion to enter a QILDRO, wherein she represented that Alexsei had retired and was in "pay status." According to Valencia's calculation, she was entitled to a monthly payment of $2671.05. The circuit court entered the QILDRO and a related QILDRO calculation order—as submitted by Valencia—on May 10, 2022.

¶ 10                              *Retroactivity Dispute*

¶ 11    Valencia filed a motion for retroactive QILDRO payments in August 2022.[1] Valencia represented that she discovered on August 16, 2021, that Alexsei would be retiring as of October 2021. Shortly thereafter, her attorney sent a subpoena to SERS, requesting QILDRO forms and other records. In its response in October 2021, SERS provided a link to a website where the forms could be found. Between October 2021 and January 2022, Valencia's attorney made several attempts to contact SERS to obtain the forms and other subpoena responses.

¶ 12    SERS rejected Valencia's original submission of QILDRO documents in January 2022, but revised documents were submitted and approved in February 2022. The approved QILDRO documents were then sent to Alexsei for his signature. After initially modifying and returning the documents, Alexsei executed the documents without modification on March 28, 2022, and Valencia filed a motion to enter the QILDRO (discussed above) two days later. The QILDRO order was entered, and she received monthly payments of $2671.05 commencing in July 2022.

¶ 13    In her motion for retroactive QILDRO payments, Valencia sought $24,039.45, representing her share of Alexsei's pension payments from October 2021 through June 2022.

---

[1] We note that Valencia also included a request for retroactive payments in the motion to enter a QILDRO which she filed in March 2022.

She subsequently was granted leave to file an amended motion, wherein she sought a corrected amount of $28,080.19. In addition, Valencia learned that Alexsei had opted for a COLA payment of $258,626.68, which he received in December 2021, *i.e.*, he elected to receive a single lump-sum payment rather than a 3% COLA each year. Valencia sought her marital share of the lump-sum payment: $91,054.95. Alexsei responded that Valencia was solely accountable for any lack of payments based on her "voluntary inaction" with respect to the pension amounts in the years following the entry of the dissolution order.

¶ 14 Although the record on appeal does not include a transcript or other report of proceedings, the circuit court apparently held a hearing which included testimony from Jeff Houch on behalf of SERS and the arguments of counsel. In an order entered on April 26, 2023, the circuit court found that Valencia's interest in the pension amounts, including the COLA payout, vested upon the entry of the dissolution order. Alexsei was ordered to "reimburse" $28,080 (for the unpaid monthly pension amounts) and $91,054 (for the COLA distribution) to Valencia "within ninety (90) days or subject to an agreed upon repayment plan."

¶ 15 Alexsei filed a motion for reconsideration, asserting that Valencia had "sat on her rights" and that the defense of *laches* applied. He maintained that Valencia failed to timely seek a QILDRO and that he was not responsible for ensuring that Valencia received her portion of his retirement benefits. He also argued that "even if Valencia is to be awarded retroactive pay," the circuit court miscalculated the amount of the retroactive award by failing to account for taxes. According to Alexsei, the correct amounts—after accounting for taxes—were $21,411 (for the monthly pension amounts) and $72,843 (for the COLA distribution).

¶ 16 Valencia responded, in part, that Alexsei was responsible for abiding by the terms of the dissolution order. She also disputed Alexsei's contentions regarding the purported calculation

errors, noting that Jeff Houch from SERS had testified regarding the "allocations" of Alexsei's retirement funds.

¶ 17    Following a hearing, the circuit court entered a written order on September 22, 2023, which denied Alexsei's motion to reconsider.  The order also provided that "[t]he [p]arties shall consult regarding any income tax withholdings from the COLA distribution to [Alexsei] as well as a timeframe for the remittance of payments due to [Valencia]."  The circuit court set the case "for back-up status" on November 16, 2023.  On October 20, 2023, Alexsei filed a notice of appeal, challenging the order entered on September 22, 2023.

¶ 18    The record on appeal then includes a motion for entry of a QILDRO filed by Alexsei on October 23, 2023, wherein Alexsei sought a QILDRO as to Valencia's retirement benefits.  An email from Alexsei's attorney to Valencia's attorney is an exhibit to the motion; the email stated, in part, that Alexsei's "1099s"—seemingly referring to federal tax forms—were attached.

¶ 19    Following a status hearing on November 16, 2023, the circuit court ordered that an upcoming status hearing (in December 2023) on the entry of the QILDRO against Valencia and on Alexsei's appeal "shall stand."

¶ 20                                ANALYSIS

¶ 21    Alexsei argues on appeal that the circuit court erred in granting retroactive relief to Valencia.  He alternatively contends that the circuit court's calculations were incorrect, as they failed to account for taxes already paid on his monthly pension and COLA disbursements. Valencia maintains that the circuit court properly determined that Alexsei failed to comply with the dissolution order, by taking payments which "rightfully belonged" to her.  She asserts that nothing in the record indicates whether Alexsei incurred or paid taxes on the monthly pension and COLA disbursements.  Although Valencia requests that the "entirety" of the funds "be

5

repaid immediately," she also suggests that this Court could order SERS to deduct the payments from future pension payments to Alexsei. Valencia further requests statutory interest from the date of the QILDRO order (May 10, 2022).

¶ 22 Prior to considering the parties' respective contentions, we first consider our jurisdiction. "A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue." *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). See also *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998) (noting that "[a] reviewing court must be certain of its jurisdiction prior to proceeding in a cause of action").

¶ 23 Illinois Supreme Court Rule 301 provides that "[e]very final judgment of a circuit court in a civil case is appealable as of right." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). Our jurisdiction is limited to the review of appeals of final judgments, unless otherwise permitted by statute or under the Illinois Supreme Court Rules. *In re Marriage of Morgan*, 2019 IL App (3d) 180560, ¶ 9; *Inland Commercial Property Management, Inc. v. HOB I Holding Corp.*, 2015 IL App (1st) 141051, ¶ 17.

¶ 24 A final judgment has been defined as a determination by the circuit court on the issues presented by the pleadings which ascertains and fixes " 'absolutely and finally' " the rights of the parties in the lawsuit. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 47 (quoting *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982)). See also *R.W. Dunteman*, 181 Ill. 2d at 159 (stating that an order "is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof"). A final judgment decides the merits of the litigation "such that there is nothing left to do but execute the judgment." *Martinez v. Leon*, 2024 IL App (1st) 231058, ¶ 15.

¶ 25    Based on our review of the record, it is unclear whether the circuit court conclusively decided the respective rights of the parties herein.  Although the order entered on April 26, 2023, set forth amounts owed by Alexsei to Valencia, the timing of such payments was not fully resolved by the order, which contemplated the possibility of "an agreed upon repayment plan." In the order entered on September 22, 2023, denying Alexsei's request for reconsideration, the circuit court directed the parties to "consult regarding any income tax withholdings from the COLA distribution to [Alexsei] as well as a timeframe for remittance of payments due to [Valencia]."  Such language suggests that the exact amount and the timing of the payments to Valencia was not definitively determined.  We further observe that a subsequent email between the parties' attorneys referenced the exchange of Alexsei's tax documentation, indicating that the tax withholding issue may not have been resolved.  The record then suggests that this matter was addressed during at least two court hearings after the notice of appeal was filed, including the "back-up status" held on November 16, 2023, which was referenced in the September 22, 2023, order.  As the record on appeal does not include transcripts (or acceptable substitutes) as to any of these hearings, we simply do not know with certainty what the circuit court decided.  See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (noting that the appellant has the burden of presenting a sufficiently complete record).

¶ 26    In sum, while the circuit court generally ruled in Valencia's favor as to the retroactivity dispute, it is not clear whether the circuit court conclusively determined key issues, including the amount and timing of Alexsei's obligations.  We thus find that there was no final judgment for purposes of Illinois Supreme Court Rule 301, as the rights of the parties were not "absolutely and finally" fixed.  *In re Rogan M.*, 2014 IL App (1st) 132765, ¶ 9.  See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994).  As Alexsei does not direct us to any other rule or statute under which we have

7

jurisdiction, we are compelled to dismiss this appeal. See *Shared Imaging, LLC v. Hamer*, 2017

IL App (1st) 152817, ¶ 19 (noting that the appellant has the burden of establishing jurisdiction).

¶ 27                                             CONCLUSION

¶ 28     For the reasons discussed herein, this appeal is dismissed for lack of appellate

jurisdiction.

¶ 29     Appeal dismissed.