2025 IL App (2d) 250026-U
No. 2-25-0026
Order filed December 30, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* J.H.S., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | |
| | ) | |
| | ) | No. 20-JA-137 |
| | ) | |
| | ) | Honorable |
| (People of the State of Illinois, Petitioner- | ) | Kathryn D. Karayannis, |
| Appellee v. Robert S., Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    (1) Issue of findings made in a temporary custody hearing was moot, as there was a subsequent adjudication of wardship supported by adequate evidence; (2) the trial court did not violate respondent's due process rights by prohibiting him from appearing at two hearings remotely; (3) the trial court's unfitness finding was not against the manifest weight of the evidence; (4) an appeal of findings made in a temporary custody hearing is moot where there is a subsequent adjudication of wardship supported by adequate evidence; (5) the plenary order of protection was a final and appealable order and should have been appealed within 30 days of its issuance; (6) the trial court's best interests determination was not against the manifest weight of the evidence; and (7) it is the duty of a guardian *ad litem*, not the parent, to call the rights of the minor to the attention of the court.

¶ 2 Respondent, Robert S., appeals from the trial court's orders finding him to be an unfit parent and that it was in the best interests of his son, J.H.S., that his parental rights be terminated. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 In August 2020, the State filed a petition alleging that J.H.S. was a neglected minor in that: (1) he was "born with cocaine in his urine, blood or m[e]conium which is not result of medical treatment administered to the mother or the infant" (705 ILCS 405/2-3(1)(C) (2) (West 2018)); (2) his environment was injurious to his welfare in that his mother Tarah H.'s [1] substance abuse issues and/or history placed the minor at risk of harm, and respondent failed to protect and/or care for him (705 ILCS 405/2-3(1)(b) (West 2018)); and (3) his environment was injurious to his welfare in that respondent's domestic violence issues and/or history placed him at risk of harm, and respondent failed to protect and/or care for him (705 ILCS 405/2-3(1)(b) (West 2018)). At an August 27, 2020, shelter care hearing, the trial court found that probable cause for the filing of the petition existed based on respondent's knowing and voluntary stipulation that State's witnesses would testify that J.H.S.'s urine tested positive for cocaine and that his umbilical cord tested positive for benzodiazepine. The question of urgent and immediate necessity as to respondent was continued at his request, but the trial court subsequently found urgent and immediate necessity regarding respondent. The parties stipulated that Tarah had tested positive for cocaine on July 1, 2020, and she and respondent had lived together throughout pregnancy. Further, both parents' parental rights to J.H.S.'s sibling were terminated in April 2019, after respondent attempted to push Tarah out of a vehicle on I-90 while the sibling was in the back seat.

---

[1] Tarah has filed a separate appeal in case no. 2-25-0056.

¶ 5    The court found immediate and urgent necessity to remove J.H.S. from the home and that reasonable efforts could not prevent or eliminate the necessity for removal; therefore, the court granted temporary custody of J.H.S. to the Illinois Department of Children and Family Services (DCFS), which was authorized to place J.H.S. Tarah and respondent were admonished that they must cooperate with DCFS, comply with the terms of the service plan, and correct the conditions that required J.H.S. to be in care or risk termination of their parental rights. CASA Kane County was appointed Guardian *ad litem* (GAL) for J.H.S., and attorneys were appointed for the GAL.

¶ 6    Following a hearing on the State's petition, the court, on November 6, 2020, found J.H.S. abused or neglected as defined by 705 ILCS 405/2-3 in that, as a newborn, he was exposed to illicit drugs.    The finding was based again on Tarah and respondent's "knowing and voluntary stipulation" that the State's evidence would include that J.H.S. tested positive for a controlled substance, cocaine, and his umbilical cord tested positive for a benzodiazepine, not as the result of any medical treatment. Tarah tested positive for cocaine on or about July 1, 2020, and Tarah and respondent lived together throughout the pregnancy. The terms and conditions concerning the temporary custody of J.H.S. remained in place, and Tarah and respondent were again admonished that they risked termination of their parental rights if they did not cooperate with DCFS, comply with the terms of the service plan, and correct the conditions that required J.H.S. to be in care.

¶ 7    On December 4, 2020, the trial court entered a dispositional order finding that it was "consistent with the health, welfare and safety of the minor and in the best interest of the minor to make the minor a ward of the Court." Respondent was found unfit, for reasons other than financial circumstances alone, to care for, protect, train, educate, supervise or discipline the minor and placement with him is contrary to the health, safety and best interests of J.H.S. because there were necessary services identified for him to complete. Those services included domestic violence

partner abuse intervention program, individual therapy, couples counseling, parenting classes and parental coaching. Reasonable efforts and appropriate services aimed at reunifying the family could not prevent or eliminate the necessity for removal of J.H.S. from the home. Guardianship and custody of J.H.S. was with DCFS. The court set a permanency goal of return home within 12 months. Respondent was again admonished that he must cooperate with DCFS, comply with the terms of the service plan, and correct the conditions that required J.H.S. to be in care or he would risk termination of his parental rights. On November 2, 2022, the trial court changed the goal to substitute care pending court determination of termination of parental rights.

¶ 8 On December 21, 2022, the State filed petitions to terminate the parental rights of both Tarah and respondent. The State alleged that respondent was an unfit person to have a child in that he: (1) failed to maintain reasonable degree of interest, concern or responsibility as to J.H.S.'s welfare under 750 ILCS 50/1 (D)(b); (2) failed to protect J.H.S. from conditions within his environment that were injurious to his welfare under 750 ILCS 50/1(D)(g); (3) failed to make reasonable efforts to correct the conditions that were the basis for the removal of J.H.S. from respondent during the nine-month period between January 19, 2022, and October 19, 2022, after an adjudication of neglect under 750 ILCS 50/1(D)(m)(i); and (4) failed to make reasonable progress toward the return of J.H.S. during the same nine-month period under 750 ILCS 50/1(D)(m)(ii).

¶ 9 The hearing on the unfitness portion of the termination petition began on July 8, 2024, and was held on four subsequent days, ending on July 15, 2024. The court found by clear and convincing evidence that the State had proven respondent's unfitness on four of five bases alleged.[2] The trial court found that concerns about domestic violence had resurfaced during the

---

[2] Tarah was also found unfit under all four bases alleged against her.

nine-month period, that respondent had stopped going to individual and couples therapy, that respondent had missed 26 drops for drug testing, and that respondent had failed to show a reasonable degree of concern or responsibility for J.H.S.

¶ 10    The best interests portion of the termination proceedings was held over six days between July 26, 2024 and October 31, 2024.  On October 31, the trial court found that it was in the best interests of J.H.S. that the parental rights of Tarah and respondent be permanently terminated. Tarah filed a motion to reconsider.  The trial court struck that motion on December 30, 2024.  In its order, the court found that Tarah and respondent "appeared via [Z]oom from a moving vehicle at 9:17 am and are removed from the platform.  They have been repeatedly ordered to appear in person and on time.  The matter was set at 9:15am."  The court also found that "[Tarah] has filed a motion to reconsider.  She has failed to notice it and failed to appear in person and in a timely manner.  [Tarah's] motion to reconsider is stricken for failure to prosecute."  The clerk's minute order noted: "Both parents appearing on [Z]oom together while driving.  Both parents ordered to appear in person.  Court denies the admittance of parents on [Z]oom."  The report of proceedings for this date does not appear in the record of appeal of this case or Tarah's separate appeal.  This court granted respondent leave to file a late notice of appeal, and this appeal followed.

¶ 11    On June 16, 2025, respondent's appellate counsel filed a motion to withdraw from representation of respondent pursuant to *Anders v. California*, 386 U.S. 738 (1967).  We granted the motion on August 12, 2025.  Respondent continued *pro se*.

¶ 12                                        II. ANALYSIS

¶ 13    On appeal, respondent makes the following arguments:  (1) the trial court exceeded its authority by imposing service plan obligations and entering dispositional findings; (2) the trial court violated respondent's due process rights by excluding him for a termination of parental rights

hearing; (3) the trial court's unfitness findings rested on hearsay and disregarded reasonable compliance and progress; (4) temporary custody removal and early case management violated respondent's due process rights and the "least-restrictive alternative requirements"; (5) the plenary order of protection entered against respondent violated respondent's due process rights and the trial court denied him the opportunity to present a defense; (6) the trial court's best-interests finding was against the manifest weight of the evidence for failing to consider a kinship placement in Florida; and (7) the trial court's best-interests finding was against the manifest weight of the evidence since the "State's chosen foster placement" was the "source of unexplained physical injuries and several emotions dysregulation" in J.H.S. We will address each argument.

¶ 14                    A. Timing and Rule 341 Compliance

¶ 15    Respondent filed a notice of appeal on December 2, 2024. Under Illinois Supreme Court Rule 311(a), our disposition was to be filed 150 days from that date, or May 1, 2025. Ill. S. Ct. R. 311(a) (eff. Apr. 3, 2018). However, respondent filed multiple motions for extension of time and his counsel moved to withdraw pursuant to *Anders* on June 16, 2025, a motion which we granted on August 12, 2025.

¶ 16    This court, in an effort to accommodate respondent's *pro se* status to a reasonable extent, granted him multiple extensions of time to file his initial brief, amended brief, and reply. Because of these extensions and delays, full briefing was not completed until November 18, 2025, well beyond the 150-day requirement. Given the foregoing, we find good cause for issuing our decision after the 150-day deadline.

¶ 17    We also note that respondent has, in the vast majority of instances, violated Supreme Court Rule 341(h)(6) and (7) (eff. Oct. 1, 2020), which require citation or reference to the pages of the record relied upon in both the appellant's statement of facts and argument. The purpose of the

rules is to require parties to proceedings before a reviewing court to present clear and orderly arguments so that we may properly ascertain and dispose of the issues involved. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. "Where a brief has failed to comply with the rules, we may strike portions of the brief or dismiss the appeal should the circumstances warrant." *Super Mix of Wisconsin, Inc. v. Natural Gas Pipeline Co. of America*, 2020 IL App (2d) 190034, ¶ 28. The State has filed a motion to dismiss this appeal for said violations. Respondent points out his status as "an indigent, *pro se* litigant." However, "*pro se* litigants are presumed to have full knowledge of applicable court rules and procedures and must comply with the same rules and procedures as would be required of litigants represented by attorneys." *In re Estate of Pellico*, 394 Ill. App.3d 1052, 1067 (2009). This court is not a repository into which the appellant can dump the burden of research. *County of McHenry v. Thoma*, 317 Ill. App.3d 892 (2000). To the extent that respondent's references to the record can be easily interpreted, we may access the cited documents. We decline to strike any portion of the brief or dismiss the appeal. The State's motion to dismiss is denied. However, we reiterate that it is not the obligation of this court to act as an advocate or seek error in the record. See *U.S. Bank v. Lindsey*, 397 Ill. App.3d 437, 459 (2009).

¶ 18                                    B. Dispositional Order

¶ 19    Respondent initially contends that the trial court lacked jurisdiction to enter the December 4, 2020, dispositional order, thus making it void. However, we lack jurisdiction over the arguments pertaining to alleged errors in the adjudicatory processes. Dispositional orders are regarded as final and appealable as of right (*In re Faith B.*, 216 Ill. 2d 1, 3 (2005)), and appealing a dispositional order is the proper vehicle for challenging an adjudicatory finding of abuse or neglect. See, e.g., *In re Arthur H.*, 212 Ill. 2d 441 (2004). Here, the time to complain of alleged errors in the neglect proceedings passed long before respondent filed his notice of appeal, as he failed to

file a notice of appeal within 30 days of the December 4, 2020, dispositional order. See *In re Leona W.*, 228 Ill. 2d 439, 455-57 (2008) (in an appeal from a judgment terminating parental rights, the appellate court lacked jurisdiction to consider alleged errors in the adjudicatory and dispositional processes); accord *In re Ja.P.*, 2021 IL App (2d) 210257, ¶¶ 23-24. Accordingly, without jurisdiction, " 'the only function remaining to the court is that of announcing the fact and dismissing the cause.' " *Houghtaylen v. Russell D. Houghtaylen By-Pass Trust*, 2017 IL App (2d) 170195, ¶ 16 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

¶ 20             C. Participation in Termination of Parental Rights Hearings

¶ 21    Respondent next argues that the trial court violated his due process rights by denying his motion to continue a hearing and refusing to allow him to participate virtually. It is true that the denial of a continuance *can* be a due process claim that we review under the *de novo* standard of review. *In re J.M.*, 2020 IL App (2d) 190806, ¶ 37.

¶ 22    The fourteenth amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend XIV, § 1. The due process clause provides heightened protection against governmental interference with a parent's fundamental rights, but there are instances where such State interference is justified to protect the health, safety, and welfare of children. *Santosky v. Kramer*, 455 U.S. 745, 759 (1982); *In re M.H.*, 196 Ill. 2d 356, 362-363 (2001). Due process is achieved in parental rights hearings by compliance with the Act and fundamental fairness. *In re D.T.*, 2017 IL App (3d) 170120 ¶ 23. Pursuant to the Act, indigent parents are entitled to representation by an appointed attorney and that attorney "shall appear at all stages of the trial court proceeding, and such appointment shall continue through the permanency hearings and termination of parental

rights proceedings subject to withdrawal, vacating of appointment, or substitution pursuant to Supreme Court Rules or the Code of Civil Procedure." 705 ILCS 405/1-5(1) (West 2018).

¶ 23 When determining what due process requires in proceedings that implicate a fundamental liberty interest, such as the fundamental rights of a parent, three factors must be considered: "(1) the private interest implicated by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute safeguards would entail." *In re M.B.*, 2019 IL App (2d) 181008, ¶ 20 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). These *Mathews* factors also apply to due process under the Illinois Constitution and have been applied in cases involving the termination of parental rights. *In re Andrea F.*, 208 Ill. 2d 148, 165 (2003).

¶ 24 While a parent has a statutory right to be present during termination of parental rights hearings, the presence of a parent is not mandatory. *In re J.S.*, 2018 IL App (2d) 180001, ¶ 19. Respondent correctly notes his undoubted interest in the outcome of the termination proceedings. And while respondent may have missed a day each from the multi-day unfitness hearing and best interest hearing, he was represented by appointed counsel who zealously cross-examined witnesses and argued on his behalf. Respondent and Tarah attempted to appear remotely at the first day of the unfitness hearing on Zoom from a vehicle, but the trial court found it was in the minor's best interest to proceed, noting it had ordered respondent repeatedly to appear in person and respondent had left the state despite having known the date of the hearing months in advance. It was highly unlikely that respondent's physical presence would have made any difference to the outcome of the case. See *J.M.*, 2020 IL App (2d) 190806, ¶ 47. And finally, respondent's repeated, last-minute requests to continue or appear remotely because he was out of the state with car trouble

runs counter to the government's interest in adjudicating the matter expeditiously. Respondent confuses the *allowance* of remote participation as a requirement that the trial court *must always* allow such accommodation. Pursuant to our analysis of the *Mathews* factors, the trial court did not violate respondent's due process rights.

¶ 25                              D. Unfitness Findings

¶ 26    Respondent next argues that the trial court erred in relying on hearsay and ignoring reasonable compliance when rendering its fitness findings. Respondent contends that the trial court's findings that he was an unfit parent were against the manifest weight of the evidence. A reviewing court should affirm a trial court's finding of unfitness if any ground on which the court found the respondent unfit is sustainable. *In re J.O.*, 2021 IL App (3d) 210248, ¶ 33. Further, we need not address every basis on which the court found respondent unfit to affirm the finding of unfitness.

¶ 27    The Act  sets forth a two-stage process for the involuntary termination of parental rights. *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. The State initially has the burden of proving by clear and convincing evidence that the parent is unfit under any single ground set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). See 705 ILCS 405/2-29(2), (4) (West 2018); *In re J.L.*, 236 Ill. 2d 329, 337 (2010). If the court finds the parent unfit, the State must then show by a preponderance of the evidence that termination of parental rights is in the best interests of the child. See 705 ILCS 405/2-29(2) (West 2018); *In re D.T.*, 212 Ill. 2d 347, 367 (2004). On appeal, this court will not disturb a trial court's finding as to parental unfitness or a child's best interests unless it is against the manifest weight of the evidence. *In re N.B.*, 2019 IL App (2d) 180797, ¶¶ 30, 43. Such a decision is against the manifest weight of the evidence where the decision is unreasonable. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 28    Here, the trial court found respondent unfit on four grounds: (1) he failed to maintain a reasonable degree of interest, concern or responsibility as to J.H.S's welfare, (2) he failed to protect J.H.S. from conditions within his environment injurious to the child's welfare, (3) he failed to make reasonable efforts to correct the conditions which were the basis of the removal of J.H.S. from respondent during the nine-month period between January 19, 2022, and October 19, 2022, and (4) he failed to make reasonable progress toward the return of J.H.S. during the nine-month period.  See 750 ILCS 50/1(D) (West 2018).  Respondent seeks to address the trial court's unfitness finding by trying to deflect the blame for the court's determination that he was an unfit parent.  He argues that the trial court erred in allowing "unreliable hearsay," that the trial court ignored all the "uncontroverted documentary evidence" of his substantial compliance, and the trial court failed to consider respondent as a placement option, in violation of DCFS rules.

¶ 29    Respondent first argues that the testimony of Tarah's counselor, Tyler Gedvalis, was inadmissible hearsay.  The testimony was offered without objection.  An issue that was not objected to during the trial is generally forfeited on appeal.  *In re N.T.*, 2015 IL App (1st), ¶ 41.

¶ 30    Even if we were to find that the admission of Gedvalis's testimony was error, which we do not, we do not find the evidence so closely balanced that the error tipped the scales of justice against respondent.  Respondent and Tarah both testified that respondent threw an object near Tarah.  Tarah testified that she moved out of the way and hit her head on a cabinet.  The record is replete with examples of respondent's propensity to commit domestic violence, including his previous incarceration for battering Tarah, and the "chaos" created by Tarah.  Respondent and Tarah have remained in a relationship during the entirety of the proceedings.  Respondent failed to complete couple's counseling and individual therapy.  Respondent missed or refused 11 drug

drops during the nine-month period. Respondent cancelled scheduled visits with J.H.S. in May 2024. The court noted that "it was the actions or inactions of parents that disrupted placements."

¶ 31 Ultimately, as noted above, we accord great deference to a trial court's finding of unfitness and will not reverse that finding unless it is against the manifest weight of the evidence. See *In re Tiffany M.*, 353 Ill. App. 3d 883, 891 (2004). Respondent focused on the allegation of hearsay and largely ignored the finding of unfitness. The finding of the trial court was not against the manifest weight of the evidence.

¶ 32                                  E. Temporary Custody Order

¶ 33 Respondent contends that the trial court erred granting temporary custody of J.H.S. to DCFS at the August 27, 2020, temporary custody hearing. However, in general, an appeal of findings made in a temporary custody hearing is moot where there is a subsequent adjudication of wardship supported by adequate evidence. *In re Edward T.*, 343 Ill. App. 3d 778, 792 (2003). At the temporary custody care hearing, the trial court found that probable cause for the filing of the petition existed based on Tarah's knowing and voluntary stipulation that State's witnesses would testify that J.H.S.'s urine tested positive for cocaine and that his umbilical cord tested positive for benzodiazepine. That stipulation also was the basis for the court's finding that J.H.S. was a neglected minor requiring the entering of a temporary custody order. As noted above, respondent stipulated that he and Tarah lived together throughout the pregnancy. Based on these stipulations, the trial court found that it was in J.H.S.'s best interest to be made a ward of the court. The court's adjudication of wardship was supported by adequate evidence, thereby rendering respondent's appeal of the temporary custody hearing moot.

¶ 34                                  F. Order of Protection

¶ 35    Respondent next contends that the trial court erred in issuing an order of protection against him. An order of protection prohibiting Tarah and respondent from having any contact whatsoever with J.H.S., his foster parents, or their child was entered on July 12, 2024, in the instant case (2020 JA 137) and entered into LEADS. On July 15, 2024, the trial court issued another emergency order of protection protecting J.H.S, his foster parents, their child, and their home from any contact from Tarah and respondent and ordered that it "be entered in a separate OP case so that it can be entered into LEADS." On July 26, 2024, after a hearing, the trial court issued a two-year plenary order of protection against both Tarah and respondent. On August 20, 2024, respondent filed a notice of appeal in 2020 JA 137; he withdrew that notice on August 23 and filed a notice of appeal "on OP case." The trial court's order of August 26, 2024, notes, "Notice of appeal of order of protection filed on behalf of father in 2024OP2091."

¶ 36    A plenary order of protection has been held to be a final and appealable order. *Martinez v. Leon*, 2024 IL App (1st) 231058, ¶ 15. In general, a notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). Here, the trial court entered its final order granting the plenary order of protection on July 26, 2024. Appeal from that order should have been taken by August 26, 2024. As no attempt at appeal was taken until December 2, 2024, we have no jurisdiction over issues pertaining to the order of protection.

¶ 37                    G. Best Interest Finding

¶ 38    Respondent finally contends that the trial court's best interest finding was against the manifest weight of the evidence for failing to consider a kinship placement and because the "State's chosen foster placement" was the "source of unexplained physical injuries and several emotions dysregulation" in J.H.S. Respondent is confused as to the purpose of the best interests

hearing. Put simply, the purpose of the hearing is to determine whether it is in the best interest of the child to terminate parental rights. The trial court was *not* deciding who would adopt J.H.S., a point the trial court made clear repeatedly during the hearing. Even if respondent had properly challenged the trial court's best interest findings, however, we would not find them to be against the manifest weight of the evidence.

¶ 39    In assessing the best interests of a minor, the trial court must look at all matters bearing on his welfare. *In re Violetta B.*, 210 Ill. App. 3d 521, 534 (1991). The interest of a parent in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *D.T.*, 212 Ill. 2d at 347; *In re Tr. A.*, 2020 IL App (2d) 200225, ¶ 56. The Act provides factors to consider for determining whether the best interests of the minor are served by terminating parental rights. See 705 ILCS 405/1-3(4.05) (West 2018). However, the court is not required to make a specific reference to each factor in its findings. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19.

¶ 40    As to the best interests finding, the trial court addressed the minor's need of permanency, noting that J.H.S. had been placed multiple times in homes with relatives before being placed in a stable, pre-adoptive home. Respondent and Tarah disrupted the placements with other relatives, which was part of the reason why DCFS decided against placing J.H.S. with respondent's sister in Florida. J.H.S. had been placed in the pre-adoptive home since December 2022 and had bonded with his foster parents and foster sibling. The court considered respondent's continued pattern of domestic violence and his continued relationship with Tarah. The court noted that Tarah created "chaos" that was "extremely concerning" and presents as "unstable." The court found both parents unfit and concluded that J.H.S. was thriving in his most recent placement. The court found by

clear and convincing evidence that it was in J.H.S.'s best interests to terminate the parental rights of respondent. We find this conclusion not against the manifest weight of the evidence.

¶ 41 Respondent also contends that J.H.S. was placed in an unsafe, emotionally harmful environment during the course of the court proceedings. However, respondent is not the appropriate person to raise such issues. At the August 27, 2020, shelter care hearing, CASA Kane County was appointed guardian *ad litem* (GAL) for J.H.S., and attorneys were appointed for the GAL. As the representative of a minor, a GAL is a party to the action. *In re Griesmeyer*, 302 Ill. App. 3d 905, 913-14 (1998). It is the duty of a GAL to call the rights of the minor to the attention of the court, to present their interests and claim for them such protection as under the law they are entitled. *Id*. at 914. "The imperative and guiding principal by which a guardian *ad litem* operates is to act in the best interests of the minor." *Id*.

¶ 42 Here, J.H.S. was represented by the GAL and appointed attorneys. The GAL, not respondent, was the appropriate party to protect the interests of J.H.S. See *In re Gustavo H.*, 362 Ill. App. 3d 802, 810 (2005) ("The guardian ad litem is charged with representing the best interests of the minor and with presenting recommendations to the court consistent with that duty."). As respondent is not the appropriate party to raise such issues here, we will not consider them.

¶ 43 We have no reason to doubt respondent's affection for J.H.S. and note his considerable effort as a *pro se* appellant. Termination of parental rights is a drastic measure. *In re Gwynne P.*, 215 Ill. 2d 340, 353 (2005). We must review the facts of a termination of parental rights case with close scrutiny. *In re S.W.*, 315 Ill.App.3d 1153, 1157 (2000). However, a trial court is in the best position to view and evaluate the parties and its decision regarding termination is entitled to great deference. See *N.T.*, 2015 IL App (1st) 142391, ¶ 27. We find no error here.

¶ 44                                        III. CONCLUSION

¶ 45    For these reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 46    Affirmed.